**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Felder M. DAVIS and Houston Felder Davis, Defendants-Appellants.**

**No. 27139.**

United States Court of Appeals, Fifth Circuit.

March 12, 1970.

Rehearing Denied April 7, 1970.

A. Pope Gordon (court appointed), Montgomery, Ala., for defendants-appellants.

Ira DeMent, U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before GEWIN, COLEMAN and DYER, Circuit Judges.

GEWIN, Circuit Judge.

■ Appellants, Felder M. Davis and his son, Houston F. Davis, were convicted by a jury in the United States District Court for the Middle District of Alabama of forcibly assaulting FBI agents while the agents were engaged in the performance of their official duties. Felder was convicted of assault with a deadly weapon and sentenced to three years imprisonment; Houston was convicted of simple assault and was placed on probation for a period of three years. On this appeal, Felder contends that the district court erroneously admitted in evidence a pistol seized in violation of the Fourth Amendment. Houston contends that the court erred in refusing certain requested charges and that the evidence of his "criminal intent" to commit the crime is insufficient to support the verdict. After a careful review of the record, we find Houston Davis's contentions without merit [1] and accordingly,

---

1. The refused charges complained of here fall into two categories. The first group posits the theory that criminal intent is absent where the defendant did not have knowledge that the person assaulted was a federal officer. We have rejected this theory on three occasions. Burke v. United States, 400 F.2d 866 (5th Cir. 1968); Pipes v. United States, 399 F.2d 471 (5th Cir. 1968); Bennett v. United States, 285 F.2d 567 (5th Cir. 1960). In addition, there is ample evidence that Houston Davis knew that the three men were FBI agents. The second group of refused charges state generally that Houston should be acquitted if he assaulted the agent believing that his father was in immediate danger of death or great bodily harm and if he used no greater force than he reasonably believed necessary to pre-

his conviction is affirmed. We find Felder Davis's contention well taken and for the reasons set out herein, his conviction is reversed.

The pertinent facts are as follows: On March 13, 1968, FBI agents Graybill, Martz and Graffagnini arrested appellants at the rural home of Houston Davis in Elmore County, Alabama. They were arrested under a warrant charging unlawful interstate flight to avoid prosecution for larceny of an automobile. Their arrest for assault was precipitated by Felder Davis's impetuous escape, after the arrest on the charge of unlawful interstate flight.

When Felder Davis learned that the agents had placed him under arrest, he bolted from his son's home. All three agents and Houston Davis pursued Felder who did not stop running until he reached his own home which was located nearby. When Felder turned to face his shouting, would-be captors, he brandished a .38 caliber pistol. The agents responded by drawing their own weapons. Houston Davis, unarmed, attacked agent Martz in an attempt to keep him from shooting Felder. In the ensuing melee, the agents fired four shots at Felder Davis who immediately disposed of his pistol and surrendered unharmed. Houston Davis was not so fortunate. He received serious bullet wounds in his struggle with agent Martz. When order was restored, the agents were quite busy caring for Houston Davis until the arrival of an ambulance which they had called. Although one of the agents made a cursory search of the area, Felder's pistol was not discovered. Houston Davis, accompanied by agent Martz, left the scene in an ambulance at about 7:00 p.m. The other two agents left shortly thereafter and proceeded to Montgomery where they jailed Felder Davis and arrived back at their offices at approximately 8:00 p.m.

Later that same evening, three other FBI agents drove to the Felder Davis home to search for the missing weapon. They did not have a search warrant. One of these agents testified that they arrived about 10:30 p.m. and discovered the pistol immediately upon alighting from their car. It is undisputed that the weapon was recovered from the yard or within the curtilage of the Davis home.

Felder contends that his pistol was the product of an unconstitutional search of his home and was erroneously admitted in evidence at his trial. After a thorough hearing on a motion to suppress, the district court found that its seizure was justifiable under either of two theories: First, the court held that if a search did take place, it was "incident to a lawful arrest", or justified by an emergency situation, and therefore did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. In the alternative, the court found that no search occurred because the pistol was in "plain view."

## I

We first consider whether the pistol was the product of a search.[2] The district court's decision that no search occurred is based on its interpretation of the "plain view" rule as it appears in Miller v. United States[3] and Harris v.

vent the death or injury of his father. These charges were also properly refused. See Burke v. United States, supra.

2. We acknowledge a semantical problem here in order to prevent misunderstanding. The disturbing word is "search" and its relationship to the "plain view" doctrine. In the instant case, the doctrines are mutually exclusive. The pistol was either the product of a search or it was seized under the "plain view" rule. We acknowledge that under certain situations

a search may occur and the evidence still be admissible under the "plain view" doctrine. See Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). This case should not be confused with Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) which was expressly overruled in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

3. 356 F.2d 63 (5th Cir. 1956).

United States.[4] In *Harris*, incriminating evidence was discovered in the defendant's car after it had been impounded by police. The search which produced the evidence was found lawful because it was made pursuant to a police department regulation designed to protect the car and any valuables it contained. The Court stated the "plain view" rule as follows:

> It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. State of California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 1634, 10 L.Ed.2d 726, 743 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).[5]

The main consideration in applying this rule is to determine whether the observing officer had "a right to be in the position to have that view."[6] Many of the cases involving the "plain view" doctrine concern evidence recovered from automobiles located in public places. The rule lends itself to application in these situations because the observing officer is not required to trespass on private property in order to have a clear view of articles inside an automobile.[7] However, where police officers trespass in order to secure the view, we have not hesitated to find a search.[8] A person's home holds a favored position in the list of those areas which are protected from unreasonable searches and seizures. Different considerations apply to movable property such as boats and motor vehicles.[9] The high degree of judicial sanctity which the courts have accorded to dwellings is based upon the concept of privacy and the right to be left alone. The security of homes should not be left to the sole discretion of police officers. The decisions have repeatedly stressed and emphasized the concept that the underlying purpose of the Fourth Amendment is to protect and shield citizens from unwarranted intrusions into their private domain.[10] Here we are dealing with a severe invasion of privacy by the intrusion of officers into the curtilage of a private home at nighttime.

In the instant case, the FBI agents went to Felder Davis's home at least three and one-half hours after his arrest for the sole purpose of looking for his pistol. They drove their automobile into the curtilage of his home and proceeded, unannounced, to look for the weapon. It was found immediately, according to the testimony of one officer, because of the reflection of the porch light on the surface of the gun. This was an unconstitutional search in the classic sense. The government will not be heard to say that the "plain view" rule applies where the observing officer

4. 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

5. *Id.*, at 236, 88 S.Ct. at 993.

6. *See* Harris v. United States, 390 U.S. 234, 88 S.Ct. 992 (1968); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623 (1963) (officers were lawfully in Ker's home to make an arrest based on probable cause); Shorey v. Warden, 401 F.2d 474 (4th Cir. 1968) (Shorey's sister, an occupant of his home, consented to the entry of police); United States v. Barone, 330 F. 2d 543 (2d Cir. 1964) (where police officers lawfully entered the premises to investigate screams).

7. *See* Marshal v. United States, 422 F.2d 185 (5th Cir. 1970); Agius v. United States, 413 F.2d 915 (5th Cir. 1969); Creighton v. United States, 132 U.S.App. D.C. 115, 406 F.2d 651 (1968); Miller v. United States, 356 F.2d 63 (5th Cir. 1966).

8. Texas v. Gonzales, 388 F.2d 145 (5th Cir. 1968); Brock v. United States, 223 F.2d 681 (5th Cir. 1955). *Cf.* Fullbright v. United States, 392 F.2d 432, 434 (10th Cir., 1968).

9. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

10. Johnson v. United States, 333 U.S 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958).

has physically invaded a constitutionally protected area in order to secure the view.[11]

## II

■ Is the search which produced the pistol justifiable as a search incident to a lawful arrest? To resolve this issue we shall briefly consider the scope of the doctrine of search incident to a lawful arrest.[12] Our analysis begins with the Fourth Amendment:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Since a search incident to arrest is a warrantless search, it must ultimately be defined in terms of reasonableness.

■■ The reasonableness of a search is not something which can be determined abstractly. As stated by Justice Frankfurter:

To say that the search must be reasonable is to require some criterion of reason. It is no guide at all either for a jury or for district judges or the police to say that an 'unreasonable search' is forbidden—that the search must be reasonable. What is the test of reason which makes a search reasonable? The test is the reason underlying and expressed by the Fourth Amendment: the history and the experience which it embodies and the safeguards afforded by it against the evils to which it was a response.[13]

Historically, warrantless searches incident to lawful arrests have been found reasonable under certain limited circumstances for several impelling reasons. The reasons justifying the existence of the rule must be examined to define its temporal and spatial limits. These reasons were outlined in Preston v. United States which concerned the search of an automobile after the occupants had been arrested, searched and taken to police headquarters and the car had been impounded:

The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. * * * The search of the car was not undertaken until petitioner and has companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car and could have destroyed any evidence of a crime * * *.[14]

---

11. The government implicitly concedes that the gun was recovered from a constitutionally protected area. *See* United States v. Myers, 398 F.2d 896 (3d Cir. 1968); Fullbright v. United States, 392 F.2d 432, 436 (10th Cir. 1968); Walker v. United States, 225 F.2d 447 (5th Cir. 1955).

12. A thorough examination of the history of the doctrine of search incident to a lawful arrest appears in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

13. United States v. Rabinowitz, 339 U.S. 56, 83, 70 S.Ct. 430, 443, 94 L.Ed. 653 (1950) (dissenting opinion). *Rabinowitz* was overruled in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 635 (1969), but Justice Frankfurter's dissenting opinion was quoted with approval. *Id.*, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d at 695.

14. 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). *Preston* was cited with approval in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d

■ If applicable to the instant case, *Preston* seems to be dispositive. The factors justifying a search incident to a lawful arrest—the need to seize weapons and prevent the arrestee from destroying evidence—were completely absent at the time the FBI agents discovered the pistol; the arrestees had been securely confined for several hours. The government insists that *Preston* is distinguishable because there the automobile and the evidence it contained had been impounded and thus protected from anyone who might try to destroy or conceal the evidence. Whereas, in the instant case, Felder Davis's pistol remained within easy reach of his family. In essence, the government is arguing that the scope of a search incident to arrest is temporally expanded where there is the possibility that a third-party may destroy or conceal evidence.[15]

■ An adoption of the government's reasoning would result in the evaporation of an arrestee's Fourth Amendment rights. There is almost always a partisan who might destroy or conceal evidence. Under the government's theory, if a man were arrested in New York, it would be perfectly reasonable to search his home in California to prevent his wife's destruction of evidence. Using the same reasoning, the police could return to the scene of arrest, be it home or office, and conduct a search at any time following an arrest.

The government's reasoning provides no logical temporal or spatial limitations to the theory of search incident to lawful arrest. We must either reject the government's view or adopt the idea that a person's Fourth Amendment rights cease at the time of arrest. We prefer the former. We conclude therefore that the ability of a third party to destroy evidence does not temporally expand the authority of arresting officers to conduct a search incident to a lawful arrest. The search must be substantially contemporaneous with the arrest.[16]

■ One final question deserves our consideration. The district court and the government attempt to justify the reasonableness of the search in terms of the emergency existing immediately after the arrest. The lower court reasoned that the agents certainly had the right to search the area and seize the weapon immediately following the arrest; they were prevented from doing so because of an emergency; thus, it was not unreasonable for the other cadre of agents to conduct a search which would have been justified if the emergency had not occurred. Clearly, Houston Davis's critical injury created a crisis demanding the agents' immediate attention. While we applaud the agents' conduct in rendering first-aid and seeking immediate professional assistance, we must conclude that the emergency did not persist for four hours. An ambulance took

685, 694 (1969), where the Court reiterated the reasons justifying a search incident to arrest, as follows:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested.

15. It should be noted that the Supreme Court has refused to *spatially* expand the scope of a search incident to arrest because a third-party might have an opportunity to destroy evidence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Justice White commented on this fact in his dissenting opinion. *Id.*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d at 701.

16. *See* Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

Houston Davis, accompanied by agent Martz, to a hospital at approximately 7:00 p.m. So far as the remaining two agents were concerned, the emergency ceased to exist when the ambulance departed. The emergency situation cannot be relied on to justify a search occurring three and one-half hours after the emergency ended.

Affirmed as to Houston Davis; reversed as to Felder Davis.