UNITED STATES of America, Plaintiff-Appellee,

v.

Bobby Ray KNIGHT and Bobby Gene Grubbs, Defendants-Appellants.

No. 30787.

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1971.

Certiorari Denied Feb. 28, 1972. See 92 S.Ct. 1171.

276

Melvyn C. Bruder, Dallas, Tex., for defendants-appellants.

Eldon B. Mahon, U. S. Atty., Andrew Barr, Charles D. Cabaniss, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before AINSWORTH, INGRAHAM, and RONEY, Circuit Judges.

RONEY, Circuit Judge.

This is an appeal by defendants, Bobby Gene Grubbs and Bobby Ray Knight, from convictions under 18 U.S.C. § 659 for knowingly possessing 566 cases of stolen Chrysler spark plugs which had been taken from the Yellow Freight System terminal in Dallas, Texas, while the shipment was moving in interstate commerce from Toledo, Ohio, to Dallas.

The defendants contend (1) that evidence admitted against them was the fruit of an illegal search and seizure, (2) that the indictments were defective and that there was a variance between indictment and proof, (3) that the evidence was insufficient to show that defendants possessed the goods or that they knew the spark plugs were stolen, (4) that the trial court improperly admitted certain documents, and (5) that the trial court gave an improper instruction. We affirm.

On November 24, 1969, at Toledo, Ohio, Champion Spark Plug Company delivered 566 cases of spark plugs to the Yellow Freight System, an interstate freight carrier, for delivery to Chrysler Corporation in Dallas, Texas. After the goods arrived at the Yellow Freight System terminal in Dallas, they were unloaded on November 27, 1969, and thereafter loaded on another trailer for city delivery. After loading, the trailer was moved from the dock to a parking area within the terminal's enclosed yard. A weekend intervened and the following Monday morning when the city driver went to get his tractor and trailer, they were not there. On December 5, 1969, the tractor and trailer were discovered outside Dallas with the 566 cartons of spark plugs missing.

## I. Motion to Suppress

A pretrial motion to suppress was filed seeking to exclude from evidence the cartons of spark plugs and other items found at 2918 Klondike on the ground that they were obtained by a search and seizure which violated the Fourth Amendment. After a hearing developed the following facts, the motion was denied.

Sergeant John Galli of the Dallas Police Department received information from an informant just before noon on December 3, 1969, that a large amount of stolen spark plugs was to be transported to the 2900 block of Klondike in Dallas. The informant had always given reliable information in the past. Sergeant Galli began a surveillance of the area by helicopter with the aid of ground units. About 4:00 P.M. that afternoon, Galli saw a pickup truck pulling a trailer going to 2918 Klondike, where the trailer was backed up to a garage and several men got out. This information was transmitted to a communication center.

Officers Wade and Hackney, who were part of Galli's ground support, were dispatched to 2918 Klondike with information that there was a suspicious car with a trailer backing into a garage. Before beginning the air surveillance, Galli had told Hackney that they would be working together in a matter involving the theft of some spark plugs.

As Hackney and Wade drove up in front of 2918 Klondike in a marked police car, a man standing at the rear of the trailer yelled "Police!" and moved quickly into the adjoining house.[1] Four men ran from the garage around to the rear of the yard.[2] Hackney left the police car and followed these men. Wade, after radioing Knight's description, walked toward the garage. As he approached, and before he entered the garage, he saw a man standing in the garage and he also saw a number of cartons with the words "Chrysler Spark Plugs" on them. The man in the garage was L. B. Luckett, the owner of the premises, who was not charged with any criminal violation arising from this matter.

Wade went into the garage and asked Luckett his name and who the spark plugs belonged to. Luckett replied that he was buying the spark plugs. Wade then saw cartons in the trailer marked "Chrysler Spark Plugs."

Meanwhile, the flight of the four men had been impeded by a fence beyond which was Luckett's big German shepherd dog. Hackett approached and talked with them. Wade and Luckett joined them shortly and Luckett identified the four as the men from whom he was purchasing the spark plugs. The four and Luckett were then placed under arrest. Thereafter, the police seized the stolen goods and reloaded the truck. A police officer also retrieved work gloves which had been thrown into the area occupied by the dog. The gloves were introduced

---

[1]. This person was identified as defendant Knight.

[2]. These were Grubbs; Mark Russell Long, who was convicted and did not appeal;

Gerald Wayne Prince, a fugitive at the time of trial; and Mackey Sowell Ingram, a Yellow Freight Systems employee in Dallas, who was deceased by the time of trial.

in evidence as having been worn by all defendants except Knight.

 The basic contention of the defendants is that prior to the intrusion by police on Luckett's property probable cause did not exist to justify either a search incident to an arrest or a search of a vehicle independent of an arrest. This argument is based on the theory that it was illegal for officers Wade and Hackney to be on Luckett's property when matters developed which gave them probable cause for arrest and for seizure of what to them was then in plain view.[3] It becomes unnecessary for us to decide whether or not probable cause for arrest or search existed prior to entry on the property because we hold that the officers were not improperly on the property.

The entry upon Luckett's property, even if made without probable cause, does not necessarily constitute a trespass. When the performance of his duty requires an officer to enter upon private property, his conduct, otherwise a trespass, is justifiable. Giacona v. United States, 257 F.2d 450 (5th Cir. 1958), cert. den., 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104; Foster v. United States, 296 F.2d 65 (5th Cir. 1961); United States v. Sterling, 369 F.2d 799 (3d Cir. 1966). Here the original tip plus the sighting from the air dictated a police investigation to determine whether stolen goods were being transported. Under the circumstances an entry onto the property for the purpose of making a general inquiry was justifiable.

 Moreover, even if the officers were trespassing on private property, a trespass does not of itself constitute an illegal search. Atwell v. United States,

414 F.2d 136 (5th Cir. 1969); Monnette v. United States, 299 F.2d 847 (5th Cir. 1962); United States v. Young, 322 F.2d 443 (4th Cir. 1963); Giacona v. United States, supra; cf. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). Nothing in the officers' conduct when they entered the property can be considered a search. Officer Wade, without his gun drawn, walked to the site of human activity, which was the garage adjoining the residence. Prior to entering the garage, he saw the Chrysler Spark Plugs cartons. This, however, was not a search since the cartons were in plain view. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Capps, 435 F.2d 637 (9th Cir. 1970). Similarly since Wade did not enter or open the trailer, but merely looked into it and saw "Chrysler Spark Plugs" within his vision, there was no search of the trailer at that time. The plain view rule also applies to the work gloves which had been thrown in with the dog.

United States v. Davis, 423 F.2d 974 (5th Cir. 1970), cert. den., 400 U.S. 836, 91 S.Ct. 74, 27 L.Ed.2d 69, does not require a contrary result. In that case, following an afternoon assault by shooting at an FBI agent at the defendant's house, FBI agents returned that night to the property without a warrant to search for the gun, which was found on defendant's premises. This court held that the plain view rule did not apply and that the gun was found as a result of an illegal search. The crucial difference between *Davis* and the situation here is that in *Davis* the agents went

---

3. Once Wade saw the cartons of Chrysler Spark Plugs, he had probable cause to believe that the individuals involved were in possession of stolen spark plugs. The previously reliable informant's tip was corroborated in all respects, the cartons of spark plugs had been seen and all the defendants had attempted to flee. See United States v. Salvo, 5th Cir. 1971, 447 F.2d 474 [1971]; United States v. Birdsong, 5th Cir. 1971, 446 F.2d 325 [1971];

United States v. Miles, 5th Cir. 1971, 445 F.2d 974 [1971]; United States v. Drew, 436 F.2d 529 (5th Cir. 1970). Accordingly, the arrests, which are to be judged in accordance with the law of Texas, within constitutional limits, Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), were lawful. See Vernon's Ann.C.C.P., arts. 14.01, 14.03, 18.22; Constant v. Texas, 155 Tex.Cr.R. 6, 229 S.W.2d 791 (1950).

on the property for the express purpose of searching for the gun, whereas, here, no such purpose was present.[4] *Davis* stated that the main consideration in applying the plain view rule "is to determine whether the observing officer had 'a right to be in the position to have that view'." Id. at 977; see also United States v. Morales, 440 F.2d 1332 (5th Cir. 1971). Officer Wade did have a right to be where he was when he saw the cartons of Chrysler Spark Plugs.

The stolen goods, having been seen by the officer, were subject to seizure.

> "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, *supra*, 390 U.S. at 236, 88 S.Ct. 993.

## II. Sufficiency of Indictment and Variance

 Defendants contend that the indictment[5] did not state an offense under 18 U.S.C. § 659[6] because the indictment did not specify one of the interstate facilities or carriers set forth in § 659. The argument is that since the indictment only stated that the goods were taken from the Yellow Freight System terminal no offense was charged because "terminal" is not set forth in § 659. A similar contention was rejected in United States v. D'Antonio, 342 F.2d 667 (7th Cir. 1965), where it was argued that an indictment charging theft from "a dock of Day's Transfer" did not state an offense within § 659 because the word "dock" was not specified in that section. The court said that:

> "In the case at bar, we find no significant difference between the meaning of the word 'dock' on one hand, and any of the words 'station', 'platform' or 'depot', on the other hand. We therefore hold that the allegation of the indictment as to the word 'dock' refers to a facility set forth in § 659 and we cannot sustain defendant's contention that the indictment failed to state an offense under that section." At p. 671.

The word "terminal" includes yards, docks, storage facilities, station houses,

---

4. Other differences are that in *Davis* the agents had time to get a warrant; the search was at night; it was unannounced; and there were no exigent circumstances present.

5. "The Grand Jury charges:
 "On or about December 13, 1969 at Dallas, Texas, in the Northern District of Texas, BOBBY GENE GRUBBS, GERALD WAYNE PRINCE, MARK RUSSELL LONG and BOBBY RAY KNIGHT, defendants, and Mackey Dowell Ingram, not named as a defendant herein, unlawfully, wilfully and knowingly, did have in their possession chattels of a value exceeding, $100, that is, 566 cases of Chrysler spark plugs, which had been embezzled, stolen and unlawfully taken and carried away from *the Yellow Freight System terminal*, 4500 Irving Boulevard, Dallas, Texas, while moving in interstate commerce as a shipment of freight and express from the Champion Spark Plug Co., Toledo, Ohio, to Chrysler Corporation, Dallas, Texas, and at the time said persons possessed such chattels they then and there knew them to have been stolen.

 A violation of Title 18, United States Code, § 659." (emphasis added)

6. Section 659, Title 18, United States Code, states in part that:
 "Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle, or from any tank or storage facility, station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express or other property; or
 Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen; * * *
 * * * * *
 Shall in each case be fined not more than $5000 or imprisoned not more than ten years, or both; * * *"

platforms and depots. See United States v. Spatuzza, 331 F.2d 214 (7th Cir. 1964), cert. den., 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38 (1964), where the indictment alleged goods were stolen from a "depot," whereas it was proved that they were stolen from the "yard" of the transport company. There is no significant distinction between the words of the indictment and the words of the statute. The indictment sufficiently apprised the defendants of what they should be prepared to meet and was adequate to permit a plea of a former acquittal or conviction in the event other proceedings are taken against them for a similar offense. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). United States v. Manuszak, 234 F.2d 421 (3d Cir. 1956), relied on by defendants, is distinguishable because in that case the indictment failed to state any specific facility or place from which the goods had been taken.[7]

Defendants also contend that there was a variance between the indictment and the proof in that the evidence failed to show the theft was from the Yellow Freight Systems terminal. However, the evidence placed the spark plugs at the terminal from which they were subsequently discovered missing. Clearly, the jury could find that the spark plugs were stolen from the terminal.

### III. Sufficiency of Evidence of Possession and Knowledge of Stolen Goods

■ Defendants contend that there was insufficient evidence that they pos-

sessed the stolen goods or knew that the goods were stolen. However, when viewed in the light most favorable to the government, the evidence is clearly sufficient to support a conviction. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Spatuzza, *supra*; United States v. May, 419 F.2d 553 (8th Cir. 1969).[8]

### IV. Admissibility of Certain Documents

■ Defendants objected to the admission of the Yellow Freight bill of lading and to its loading manifest on the ground that they were carbon copies and not the best evidence. However, the witness through whom the documents were introduced testified that the copies were duplicate originals. Each duplicate copy is admissible without accounting for the non-production of the other copies. IV Wigmore, Evidence § 1233 (3d Ed.1940); McCormick, Evidence, 419 (1954).

■ Defendants also object to introduction of a Champion Spark Plug bill of lading on the ground that no representative of Champion described Champion's procedure in preparing the bill. Even assuming the bill of lading was improperly admitted, the error is harmless since the information contained in Champion's bill was also contained in Yellow Freight's bill, which was properly admitted. Rule 52(a), F.R.Cr.P.

---

7. *Manuszak* was not followed in Dunson v. United States, 404 F.2d 447 (9th Cir. 1968) and United States v. Wora, 246 F.2d 283 (2d Cir. 1957).

8. Luckett testified that Grubbs approached him and offered to sell him 566 cases of spark plugs at twenty cents a piece. Retail price was $1.25, wholesale was fifty-four cents. Grubbs told Luckett they were stolen and wanted to deliver them to Luckett's home rather than his place of business. Grubbs asked Luckett to have his family away from the house at the time of delivery. Delivery was made by Grubbs, Knight and the three others. Grubbs instructed them all to wear gloves before they touched any boxes. When Knight stated he had forgotten his gloves, he was told not to touch any boxes. While the others unloaded, Knight stood outside and upon arrival of the officers, Knight yelled "Police" and moved quickly into the house. He then apparently crashed through a rear window and screen and was arrested fleeing about two blocks away. Grubbs was arrested on the premises. The work gloves were found near where Grubbs and the others were arrested.

V. Instruction of Inference from Possession of Recently Stolen Property

Defendants objected to the following instruction:

"Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find in the light of surrounding circumstances shown by the evidence that the person in possession knew the property had been stolen."

This instruction does not fail to inform the jury that the inference is permissive and it does not place the burden on defendant to testify. Thurmond v. United States, 377 F.2d 448 (5th Cir. 1967); Minor v. United States, 375 F.2d 170 (8th Cir. 1967), cert. den., 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed.2d 177; Lee v. United States, 363 F.2d 469 (8th Cir. 1966), cert. den., 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227; compare Barfield v. United States, 229 F.2d 936 (5th Cir. 1956).

Affirmed.