Cariston THORNTON, Petitioner-
Appellant,

v.

Dr. George BETO, Director, Texas Depart-
ment of Corrections, Respondent-
Appellee.

No. 72–1086.

United States Court of Appeals,
Fifth Circuit.

Dec. 26, 1972.

Certiorari Denied April 2, 1973.
See 93 S.Ct. 1560.

Stephen P. Bender, Houston, Tex., for petitioner-appellant.

Crawford C. Martin, Atty. Gen., Roland Daniel Green, III, Austin, Tex., for respondent-appellee.

Before MORGAN, CLARK and INGRAHAM, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Cariston Thornton appeals from the judgment of the district court denying his applicaton for a writ of habeas corpus in connection with his Texas state conviction for robbery by assault. The court found that Thornton had exhausted his state court remedies, but denied relief without a hearing. We affirm.

Thornton contends (1) that he was convicted by use of evidence obtained as a result of his illegal arrest, search and seizure; (2) that he was not arraigned on the charge for which he was subse-

quently indicted; (3) that he was forced to participate in numerous lineups without the advice of counsel; and (4) that he was prejudiced by the prosecuting attorney's reference to the defendants as "niggers" during the redirect examination of one of the victims.

The case arose when two men, Thomas Johnson and Gerald Lamb, were accosted by three robbers in a lighted parking shed around 3:00 a.m. on a Sunday morning. The three robbers took Johnson's wallet and Lamb's watch and locked the two victims in the trunk of Johnson's car. For the next several hours the car was driven to various places. The men inside the trunk were able to see out through a broken tail light and they observed a pickup truck following the car. On several occasions the driver of the pickup truck got out of his vehicle and rode in the car. At approximately 1:30 p.m. the car was parked in an alley and the robbers got into the truck and left. Johnson and Lamb pried open the trunk lid with a tire tool and called the police.

When the police arrived the victims told the officers what occurred and gave them a detailed description of Thornton and the other robbers and related the make and model-year of the truck. This information was broadcast over the police radio and within 30 minutes the truck was stopped and two men arrested. The officers learned from the two men arrested that the owner of the truck lived at a certain address and apartment number. The officers proceeded immediately to the apartment and knocked on the door. When an occupant of the apartment opened the door and invited them in the officers entered and observed nine persons inside the apartment. The police officers heard the commode running as though it had just been flushed and proceeded to the bathroom where they found credit cards and other papers belonging to the robbery victims floating in the commode. A search of the one bedroom apartment revealed the watch stolen from Lamb and several guns. All nine occupants of the apartment were arrested and taken to the police station.

Shortly thereafter Thornton was taken before a magistrate and told that he was charged with the robbery of a bowling alley.

The Supreme Court in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) defined the substance of probable cause as "a reasonable ground for belief of guilt."

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. at 1890.

■ With this standard in mind we turn to the record in this case for a close examination of the precise information possessed by the police officers at the time of Thornton's arrest. After receiving a telephone call the officers drove to a specified location where they found two men who claimed to have been robbed at gunpoint and forcibly driven around town while locked in the trunk of their own automobile. The victims described the robbers, including Thornton, in great detail by informing the officers of the height, weight, build, skin color, facial characteristics and type clothing of each assailant. The victims further informed the officers of the license number of the truck and gave a complete description of the truck itself. In the bushes nearby the officers found a drawer from a cash register, and in the victims' car the officers discovered a spring from a cash register and some loose change. The officers could see that the trunk lid of the victims' car had been forced open, confirming the victims' story that they had been locked inside the trunk after the robbery. Approximately 30 minutes later the pickup truck was located and one of its occupants informed police of the apartment number and street address of the truck's owner. Arriving at that location the police were invited into the apartment where they observed several persons, one of whom—Thornton—

matched the victims' description. At that point in time we hold that the police had reasonable grounds for believing that a felony had been committed and that Thornton was one of its perpetrators. Hence the requirement of probable cause was met. See Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971); United States v. Wysocki, 457 F.2d 1155 (5th Cir. 1972); United States v. Breedlove, 444 F.2d 422 (5th Cir. 1971).

Since the arrest was made with probable cause, the attending search of the apartment was lawful as incident to the arrest. The arrest and search in this case occurred prior to the decision of the Supreme Court in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Thus the standards announced in that case do not have application here. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). Judged by standards enunciated in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) the search conducted here was reasonable and lawful. The fact that the search was commenced shortly before the arrest was made does not vitiate the search as incident to the arrest since there was probable cause to arrest without regard to the fruits of the search. United States v. Squella-Avendano, 447 F.2d 575 (5th Cir. 1971); United States v. Brookins, 434 F.2d 41 (5th Cir. 1970).

Appellant's remaining contentions are likewise without merit. His subsequent indictment on a charge different from the one on which he was originally arraigned does not amount to a violation of constitutional rights which would invalidate his conviction. United States v. Coley, 441 F.2d 1299 (5th Cir. 1971); Jackson v. Smith, 435 F.2d 1284 (5th Cir. 1971). As the district court found, the trial transcript shows that the in-court identification was based upon origins independent of the lineup, and appellant was not prejudged thereby. Therefore, we need not inquire into the propriety of the lineups. Lucas v. State of Texas, 451 F.2d 390 (5th Cir. 1971);

Ward v. Wainwright, 450 F.2d 409 (5th Cir. 1971). Finally, the court below found that the prosecuting attorney's reference to the defendants as "niggers" was not prejudicial. The defense objected when the remark was made, and the court sustained the objection, instructing the jury to disregard the reference.

Perceiving no clear error in the district court's findings of fact and no error in its application of the law, the judgment below is affirmed.