Sylvian Dale BISHOP, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Director, Division of Corrections, Respondent-Appellee.

No. 74–2617.

United States Court of Appeals, Fifth Circuit.

April 18, 1975.

L. B. Vocelle, Charles M. Rieders (Court appointed), Vero Beach, Fla., John P. Grier, Cocoa Beach, Fla., for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Basil S. Diamond, Asst. Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before BROWN, Chief Judge, and MURRAH * and WISDOM, Circuit Judges.

MURRAH, Circuit Judge:

■ Appellant Bishop was convicted by jury verdict in state court and sentenced to death for the murder of two girls. On appeal, the Florida Supreme Court upheld the conviction while commuting the sentence to life imprisonment.[1] Bishop then filed this habeas corpus petition alleging these errors: (1) denial of change of venue in light of jury bias, caused by intense and inflammatory pre-trial publicity; (2) failure to suppress as evidence Bishop's in-custody statements following illegal arrest and detention; (3) admission of improper evidence; and (4) prejudicial comments by the prosecutor.[2] The trial court denied

---

* Senior Circuit Judge of the Tenth Circuit sitting by designation.

1. The Florida Supreme Court commuted the sentence from death to life imprisonment on the authority of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Bishop v. Florida, 276 So.2d 831 (Fla.1973).

2. The errors alleged in this habeas corpus attack were also alleged in Bishop's brief on the direct appeal. The Florida Supreme

the petition without a hearing upon its scrutiny of the state court record, under Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971). The case comes here on the same record. We affirm.

█ We begin by reiterating that the writ of habeas corpus cannot ordinarily be used to correct mere errors or irregularities in the trial court proceedings. A judgment may be void, however, and subject to collateral attack for palpable irregularities resulting in a denial of fundamental fairness or of a specific constitutional right. See Davis v. United States, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); Burgett v. Texas, 389 U.S. 109, 113–114, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); Alligood v. Wainwright, 440 F.2d 642 (5th Cir. 1971); Pleas v. Wainwright, 441 F.2d 56 (5th Cir. 1971). We accordingly examine the record for error so fundamental as to render the trial court judgment a nullity.

██ We know, of course, that prejudicial pre-trial publicity may so infect community sentiment as to render the selection of a fair and impartial jury improbable and thus constitutionally require a continuance or change of venue on request. See Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); United States v. Collins, 472 F.2d 1017 (5th Cir. 1972); United States v. Nix, 465 F.2d 90, 96 (5th Cir. 1972); Fed. Rules Crim.Proc. 21(a). Cf., Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). We must also recognize that "in these days of . . . diverse methods of communication . . . scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, supra, 366 U.S. at 722–723, 81 S.Ct. at 1642. The trial court is necessarily the first and best judge of community sentiment and the indifference of the prospective juror. Appellate courts, especially on collateral attack, will interfere only upon a showing of manifest probability of prejudice. Id., at 723–724, 81 S.Ct. 1639; United States v. Nix, supra, 465 F.2d at 96.

█ In our case, of the forty-eight prospective jurors called, forty-three indicated some exposure to pre-trial publicity. In the case of seven, the exposure was sufficient to lead to a fixed opinion; and six of these were excused.[3] Neither side exercised all available peremptory challenges. We find nothing in the record to indicate that, as a result of pre-trial publicity, there was any specific prejudice to the right to a fundamentally fair trial or even a substantial likelihood of such prejudice. Under these circumstances, we cannot, in habeas corpus, review the trial court's sound discretion in denying the change of venue.

█ Bishop was arrested without warrant at a public movie theater. The government makes no claim that any exigent circumstances prevented obtaining a warrant before the arrest; in fact, the officers possessed a warrant for the search of Bishop's home at the time of

---

Court did not treat these allegations specifically, but stated only that "no reversible error is made to appear and the evidence does not reveal that the ends of justice require a new trial . . . " Bishop v. Florida, supra, 276 So.2d at 832. We conclude that there was no failure to exhaust state remedies here. The trial court so found, and the parties do not dispute it.

**3.** The seventh juror, who was not excused for cause, when asked whether he had formed any opinion as to any elements of this homicide, answered: "I sort of have, yes, sir." When later asked by the state trial judge: "Does one side or the other have one strike against them at this point?" he answered, "No." Challenge for cause was then denied, and no peremptory challenge was made, although more than one was available.

the arrest. It seems to be the law, in Florida and generally, that the Fourth Amendment does not forbid warrantless arrest in a public place for manifest probable cause. Falcon v. Florida, 226 So.2d 399 (Fla.1969); Odom v. United States, 403 F.2d 45 (5th Cir. 1968), appeal dismissed, 400 U.S. 23, 91 S.Ct. 112, 27 L.Ed.2d 122 (1970); United States v. Hall, 348 F.2d 837, 841–842 (2d Cir. 1965). Cf., Ker v. California, 374 U.S. 23, 34–41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Giordenello v. United States, 357 U.S. 480, 484–487, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Jones v. United States, 357 U.S. 493, 497–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). Thus, the only requirement for the arrest here is probable cause—i. e., facts and circumstances which would warrant a reasonably prudent man to believe that an offense had been committed by the arrestee. See Thornton v. Beto, 470 F.2d 657 (5th Cir. 1972), cert. denied, 411 U.S. 920, 93 S.Ct. 1560, 36 L.Ed.2d 313 (1973). Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

■ It is not disputed that at the time of the arrest on September 19, the police knew from their investigation that the two girls stopped for service at the gas station where Bishop worked at 1:00 A.M. on September 1; that he asked his supervisor for permission to leave at about that time, and before departing, was the last person seen talking to the girls; that he was seen soon thereafter leaving the turnpike at the Vero Beach exit with at least one of the girls in his car; that, a week later, on September 8 or 9, he told a friend about seeing what appeared to be two corpses in the woods; that, on September 14, he led his friend to the corpses; that the friend immediately called the police, who then came to the scene and found the nude and decomposed bodies, one with hands bound behind her back; that the bodies were later identified as the two girls; that Bishop gave the police a statement the next day, September 15, claiming no knowledge of the corpses until September 14; that a discrepancy later appeared in his September 15 statement regarding his reason for being in the area of the corpses; and that he told his supervisor he did not take the girls to Vero Beach on September 1. We think these facts sufficient to constitute probable cause for the warrantless arrest here; and Bishop's in-custody statements were not made inadmissible by this arrest.

■ Nor were they made so by the fourteen hour delay between the arrest at 11:25 P.M. Saturday and the taking before a magistrate at 1:30 P.M. the next day. The facts regarding the arrest are in the record and are not disputed. Bishop was properly advised of his rights at the time of arrest Saturday night. He then unsuccessfully attempted to telephone his attorney. He was briefly questioned as to his knowledge of the girls, to which he replied he knew nothing. From the jail the next morning, Sunday, he caused a police officer to be called at home for the purpose of coming to the jail to talk to him. Upon the officer's arrival, Bishop was again advised of his rights and thereupon stated he had taken the girls to the scene where their bodies were found and had struck one of them. He volunteered to take the officers to the scene for a reconstruction of the events and, at the scene, helped officers find the girls' clothing and pocketbooks. He gave all this information freely and voluntarily. We conclude that Bishop's statements were not the product of interrogation, but were volunteered on his own initiative. Such statements are admissible. Gissendanner v. Wainwright, 482 F.2d 1293 (5th Cir. 1973); United States v. Powers, 444 F.2d 260 (5th Cir. 1971).

■ Bishop argues that evidence bearing on his character was admitted when he did not take the stand to put his character at issue and that his own statements were admitted prior to the establishment of a prima facie corpus de-

licti. He complains specifically of testimony that he had once threatened the life of a repairman who awakened him; that he had been fired from a job for displaying a knife and talking about his violent temper; and that he had training in butchering animals. Our examination of the record demonstrates that there was an apparent knife wound on each girl's neck; that a knife was found near the scene of the bodies; and that the bodies were nude, one with hands bound in back. Apart from Bishop's statements, this was sufficient evidence of criminal agency[4] causing the deaths of the girls to establish a prima facie corpus delicti. Even assuming some irregularity in the admission of the testimonial evidence or the order of proof, there is here no fundamental defect cognizable in habeas corpus. See Loper v. Beto, 405 U.S. 473, 480–484, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

■ Finally, Bishop alleges that the prosecutor, in closing to the jury, commented on Bishop's failure to take the stand, thus prejudicing his constitutional protection against self-incrimination. We have carefully reviewed the prosecutor's closing statements[5] and understand them to be a comment upon Bishop's expressionless courtroom demeanor rather than upon his failure to take the stand. Such comment raises no habeas corpus issue. See Higgins v. Wainwright, 424 F.2d 177 (5th Cir. 1970).

Affirmed.

---

**4.** Bishop admits that the other elements of corpus delicti were established—i. e., the identity and death of the two victims.

**5.** In pertinent part, the prosecutor stated:
"The defense asked you why didn't this boy bury these bodies. If he killed them, why did he do things that would make it obvious he was the one that did it? Why didn't he just bury the bodies? I think I have an answer for you: no one would have known about it, that's why. This boy wants notoriety; he wants to play games, just like he did the night he gave the state-ment. Tempt you a little bit, holds the carrot. If no one knew about it, it wouldn't mean anything. Sylvian Bishop wouldn't be on the front page of the paper or in this courtroom. Look at his attitude during the week. Have you seen one little ounce of remorse on his face, one outburst, one apparent showing of concern? He's sat there like a knot on a log through the whole trial. He didn't talk to his lawyer, hasn't said anything. He just sits there. He doesn't do anything. Absolutely nothing."