UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward Murry GATES,
Defendant-Appellant.

No. 75–2784.

United States District Court,
Fifth Circuit.

March 18, 1976.

J. Hue Henry, Federal Public Defender, Atlanta, Ga., (Court Appointed Not Under Act), for defendant-appellant.

John W. Stokes, U. S. Atty., Jerome J. Froelich, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before MORGAN, CLARK and TJOFLAT, Circuit Judges.

PER CURIAM:

Gates was convicted by a jury on a single-count indictment charging theft of goods from an interstate shipment. 18 U.S.C. § 659. The facts essential to this appeal are undisputed. The goods in question, a carton of sweaters, were shipped from Mr. Henry's in New York for delivery to the consignee, Baron's Men's Shop in Atlanta. When the interstate carrier (Carolina Freight Carriers) arrived at its Atlanta destination, the consignee notified the driver of his decision not to accept delivery because the shipment was overdue and gave instructions to send the sweaters back to New York. The carton was stolen from the carrier's truck just as the driver was leaving the shop to return to the carrier's local terminal. Defendant's participation in the offense as described above is not challenged on appeal. The sole issues for our review concern the sufficiency of the indictment and the establishment of an adequate interstate commerce nexus.

The indictment charged defendant with theft from Carolina Freight Carriers[1] but failed to track the statutory language of 18 U.S.C. § 659[2] and specify which of the interstate carriers or facilities therein enumerated was involved in this offense (e. g., theft from a motortruck). Defendant characterizes the omission as fatal and claims that the indictment thus failed to charge an offense under § 659.

Cases from the Third Circuit support defendant's position. *United States v. DiSilvio,* 520 F.2d 247 (3d Cir. 1975); *United States v. Manuszak,* 234 F.2d 421 (3d Cir. 1956). The court in *Manuszak* invalidated an indictment which stated only that goods were taken from an interstate shipment of freight without designating a particular carrier or facility. The indictment was treated as a nullity for failure to allege an essential ingredient of the crime.

Such a strict approach, however, has been rejected by several other cir-

---

1. The indictment in pertinent part charged that Gates "did unlawfully and wilfully steal, take and carry away from Carolina Freight Carriers Corporation . . . a carton of sweaters . . . which . . . were moving as, were a part of, and which constituted an interstate shipment of freight or express, which were being shipped from New York in the State of New York, to Atlanta, in the State of Georgia . . . ."

2. 18 U.S.C.A. § 659 provides in part:

"Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle, or from any tank or storage facility, station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express or other property;

.    .    .    .    .

"Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both   .   .   . ."

cuits. *United States v. Spivey,* 448 F.2d 390 (4th Cir. 1971), *cert. denied,* 405 U.S. 927, 92 S.Ct. 976, 30 L.Ed.2d 799 (1972); *Dunson v. United States,* 404 F.2d 447 (9th Cir. 1968), *cert. denied,* 393 U.S. 1111, 89 S.Ct. 925, 21 L.Ed.2d 808 (1969); *United States v. Wora,* 246 F.2d 283 (2d Cir. 1957). The majority reasons that even a summary statement such as "stolen from an interstate shipment" is sufficient to imply that the theft was from a "covered" instrumentality of interstate commerce, especially since the enumeration in § 659 is nearly exhaustive. Absent a showing of prejudice, the indictment will withstand scrutiny if it adequately apprises defendant of what he must be prepared to meet and protects him against double jeopardy. *See Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932).

While not expressly joining the majority, this court in *United States v. Knight,* 451 F.2d 275, 279–80 (5th Cir. 1971) distinguished *Manuszak* and held that an indictment charging theft from "the Yellow Freight System terminal" was sufficient, despite its failure to list an enumerated facility. The *Knight* court reasoned that the word "terminal," although not specifically mentioned in § 659, could reasonably be determined to refer to one of the covered facilities in § 659. Since there was no significant distinction between the words of the indictment and the words of the statute, the grand jury charge was deemed valid. *Id.* at 280.

■ Similarly, there is no contention that the indictment in this case was too scanty to inform Gates of the essentials of the government's charge against him. In addition to charging the date of the offense and the averments concerning the nature and value of the goods stolen, defendant was apprised that the items were taken from a specific victim, *i. e.,* Carolina Freight Carriers Corporation. The indictment here was even more specific than those validated by the majority of appellate courts. To require the word "motortruck" to appear somewhere in the grand jury charge would be hy-

pertechnical and would not effectuate the congressional purpose of protecting interstate shipments. Rather than further distinguishing *Manuszak,* we now decline to follow its narrow rule and thus refuse to set aside Gates' conviction on this basis.

Gates next contends that the evidence failed to establish an essential ingredient of a § 659 violation, *i. e.,* that the stolen goods were part of an interstate shipment. According to defendant, the undisputed facts show that at the time of the theft, the goods had come to rest in Atlanta and had lost their interstate character. His theory is that since the consignee had previously determined that he would refuse delivery, the goods were in fact the property of the interstate carrier. When the theft occurred, the carton of sweaters was simply in local transit from the consignee's local store to the owner-carrier's local terminal. As an alternate theory, Gates argues that Carolina Freight Carriers was merely acting as a local warehouseman or bailee for the consignor.

■ This strained interpretation of events is unpersuasive. The test for determining whether a shipment is in interstate commerce and thus within the ambit of the statute is

a practical one, depending upon the relationship between the consignee, consignor, and carrier, the indicia of interstate commerce at the time the theft occurs, and the preservation of the congressional intent. *United States v. Cousins,* 427 F.2d 382, 385 (9th Cir. 1970).

There is no need to employ complex fictions about legal title to arrive at an artificial result. The facts of this case strongly indicate that the stolen goods were part of a continuing interstate shipment. Final delivery was never effected. In fact, the goods were stolen before they were ever removed from the truck by an employee of the carrier. That Baron's initially rejected the shipment is not controlling. The carton retained its interstate character despite

the aborted delivery and the fact that were it not for the theft, the carrier would have been forced to make arrangements to dispose of the shipment, presumably at the direction of the consignor. Finding no merit in either of defendant's assertions of error, we

Affirm.