UNITED STATES of America

v.

Terry Dale NORMAN.

Crim. No. 78–136.

United States District Court,
W. D. Pennsylvania.

Aug. 15, 1978.

As Amended Oct. 23, 1978.

Gary B. Zimmerman, Pittsburgh, Pa., for defendant.

ROSENBERG, District Judge.

The defendant, Terry Dale Norman, moves to suppress a list of evidence seized by arresting State officers in control and supervision of the airport in Pittsburgh, Pennsylvania, and to suppress confessions or admissions. These officers were directly responsible for the public safety relating to air travel.

On February 22, 1978, the defendant, prior to boarding a plane, placed on a moving conveyor counter of the security check, an embassy case and a separate piece of luggage for passing through the magnetometer. The magnetometer is a device which reveals upon a scope of approximately 6 inches by 9 inches the image of the metallic contents of the baggage in an X-ray like fashion. When the luggage moved through the magnetometer, a TWA security guard observed what she believed to be a gun in one of the suitcases of the defendant. The guard put the bag through the magnetometer again for confirmation, and then called an Allegheny County policeman who also had the bag put through. At this point, the defendant was taken into custody and detained at the Airport Police Station, and the defendant's two suitcases were seized. At the station, the defendant was given his rights and he was asked to open his luggage. The defendant denied that he was the owner but admitted possession of the luggage for transportation to Phoenix to another person. Then the officers told the defendant that if he did not open the luggage, they would procure a warrant to open and search the luggage. The defendant opened the snaps and revealed the contents, which consisted of contraband for obvious illicit purposes in violation of federal law. Thereupon the State and Federal law enforcement agencies were notified and proceeded with the prosecution of this case.

The attempt to board an aircraft with a concealed deadly or dangerous weapon alone is a felony violation under federal

Thomas A. Crawford, Jr., Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

**300**

law. 49 U.S.C. § 1472(*l*). All other material seized, particularly narcotic drugs, was such as required the attention and concern of the federal law enforcement agencies. The defendant complains the entire process was an illegal search and seizure; that the defendant was compelled to open the luggage upon the threat of procuring a warrant; and that in accordance with State law, since the seizure was primarily by a State officer, it can have no validity in a federal proceeding. ·

■ The difficulty with the defendant's contentions for his motion is that (1) the federal jurisdiction does not depend upon what a State court might or might not do under the circumstances; (2) a warrant under these circumstances was not necessary because when the authorities took the defendant into custody with his luggage, they arrested the defendant, together with his luggage. *United States ex rel. Clouthier v. Maroney*, 238 F.Supp. 161 (D.C.Pa. 1964), affirmed 341 F.2d 295, C.A. 3, 1965; and (3) the entire episode at that time was founded on probable cause.

■ The law is that when an officer, for instance, sees a gun through the window of a stopped automobile, he has a right to search and seize the contents of the automobile. *Vaughn v. United States*, 383 U.S. 855, 86 S.Ct. 107, 15 L.Ed.2d 93. Here the magnetometer revealed the contents of the luggage and the gun in the same manner as if the luggage had been open and visible to the naked eye of those in charge of the examination of the luggage.

■ Having seen a crime being committed and having taken custody of the suitcases containing the firearms in a legal fashion, it then matters little how the officer got the firearms out of the suitcases carried by the defendant. Objects falling in plain view of an officer who has the right to be in the position to have that view are subject to seizure under the "clear view doctrine" and may be introduced in evidence. *United States v. Davis*, 423 F.2d 974, C.A.D.C., 1970, cert. den. 400 U.S. 836, 91 S.Ct. 74, 27 L.Ed.2d 69; *Ker v. State of California*, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 10 L.Ed.2d 726.

In *Davis, supra,* at page 977, Judge Gewin asserted a clarification of the principle involved that "The main consideration in applying this rule is to determine whether the observing officer had a 'right to be in the position to have that view'." No one here may question the right of the magnetometer checker, the security officers, the County Police and the federal prosecuting officer.

Probable cause can be no plainer than this as it is with a roentgenologist, who by his roentgen ray plainly observes a broken bone and the many other densities which he may find in detecting the human physical makeup or its defects. Neither will the law dispute the microbiologist who sees through a particularly modern microscope the miniature world of life and its atomic existence.

■ Thus, the defendant's attack of lack of probable cause is, in reality, frivolous. Neither does the defendant present any support in the many cases which he cites, since there is a clear distinction between an arrest or seizure begun by police and not followed through, and one in which, as in this case, the police arrest, seizure of the luggage and immediate follow through with an examination in as short a time as it took to convey the defendant to the police office or station to process him.

This is not a case where as in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), an automobile is seized and taken to a police station for a period of time out of the control of the defendant and later searched. Neither is this a case like *United States v. Chadwick et al.*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538, where the agents had no knowledge of what the contents of a locked footlocker were and at a later time opened it without a search warrant. Here the defendant in his brief admits that "[t]he defendant was in custody and the police had exclusive control of his luggage."

Thus, the law in *Chadwick* will not help the defendant here because in the *Chadwick*

case the luggage was the personal property not immediately associated with the person of the arrestee, while in this case, the arrestee and his luggage were associated and in the control of the police. If the police had let the arrestee go, or even abandoned the luggage for a short time, then there would have been similarity to the cases of freed defendants or the yielded or abandoned evidence. A search warrant would have been necessary if it had left the control of the officers.

In *Chadwick*, it was said,

". . . there may be other justifications for a warrantless search of luggage taken from a suspect at the time of his arrest; [as where] officers have reason to believe that luggage contains some immediately dangerous instrumentality, such as explosives."

No one doubts, these days, that a gun aboard an airplane is a dangerous device.

■ As for the argument that the defendant acquiesced to the directives of the police because he was told that if he did not consent the police would obtain a warrant and conduct a search, it is difficult to believe that this is any kind of a threat. The defendant in this case knew the law as it relates to the apprehension of one who would take aboard a dangerous weapon, which from time to time has been used by terrorists and highjackers. He had the knowledge, also, that the magnetometer through which the luggage was moving would divulge the metallic contents in his bag. He voluntarily, while in the possession of the bag, placed it on the conveyor belt and again voluntarily waived his right to have the magnetometer reveal the contents of his bag. There is evidence that the defendant did so with open eyes. From that moment on what occurred was a consequence of his voluntary act, including the arrest and seizure of the bags, and this was logical, probable and legal.

To argue that if he did not open the bag, a warrant would be procured and this would be coercion is absurd, because both the arrestee and the bag were in actual control of the authorities. *United States v. Clouthier, supra.* The fact that the gun was revealed by the magnetometer was visible probable cause and was sufficient for the arrest of the defendant and the retention of the evidence. The fact that upon opening of the luggage more contraband became visible, such as illicit drugs and a large quantity of credit cards of various persons, is legal evidence which is properly in the custody of the arresting officer and cannot be suppressed. It would be dire consequence to public safety if the frivolous technical argument of the defendant prevailed in a case such as this, where responsible precautions are necessary for safe travel.

■ The defendant also moves to suppress certain written and oral statements made at the detention area of the Allegheny County Police Office at the Airport and in the Jones Law Building in the City of Pittsburgh. Although uncontroverted testimony at the hearing indicated that the defendant received ample warning of his constitutional rights, the defendant argues that he was not properly taken before a judicial officer for arraignment within six hours of his arrest, and that therefore all statements made by the defendant prior to his arraignment must be suppressed.

While this may be case law in Pennsylvania, it is not applicable in a federal court. *United States v. Edwards*, 539 F.2d 689, C.A. 9, 1976. In the *Edwards* case it was held that confessions given more than six hours after arrest during a delay in arraignment were not per se involuntary, but was one factor to be considered in light of surrounding circumstances. In *Bishop v. Wainwright*, 511 F.2d 664, C.A. 5, 1975, it was held that a fourteen hour delay between the defendant's arrest and taking before a magistrate did not render in-custody statements inadmissible. Furthermore, the Third Circuit has recently ruled in *Patzig v. O'Neill*, 3 Cir., 577 F.2d 841, 1978, that an overnight delay between arrest and arraignment is not unreasonable and does not go to the admissibility of in-custody statements made during that time. In the matter at hand, only eight hours elapsed be-

tween the defendant's arrest and his arraignment.

Accordingly, the motion of the defendant to suppress all the evidence will be denied, and the motion to suppress confessions and statements will also be denied.