**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John McBride HULL, Jr., Defendant-
Appellant.**

**No. 29116.**

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1971.

Rehearing Denied Feb. 11, 1971.

1

J. H. Painter, III, Houston, Tex. (Court Appointed), for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEWIN, MORGAN and ADAMS,* Circuit Judges.

GEWIN, Circuit Judge:

Defendant John McBride Hull, Jr., prosecutes this appeal following a non jury trial in which he was convicted of transporting a stolen motor vehicle in interstate commerce from Covina, California to Houston, Texas in violation of the Dyer Act, 18 U.S.C. § 2312. Hull predicates reversible error on three grounds: (1) the exploitation of an unlawful search led to the evidence of his possession of the alleged stolen vehicle and that such evidence was inadmissible; (2) the government failed to establish the ownership of the automobile purported to be stolen and, therefore, did not prove all the elements of the crime; and (3) the evidence was insufficient to prove that appellant intended to steal the automobile. Because we find that the critical evidence upon which the conviction was based did not emanate from an illegal search and because the other contentions are without merit, we affirm.

At the commencement of the trial, counsel for Hull requested the court to make special findings of fact pursuant to Rule 23(c), Fed.R.Crim.P. In accordance with this request the court found the following facts to be undisputed: On May 16, 1969 the defendant rented a 1969 jade black Torino Ford from the Russ Davis Ford Company in Covina, California. The rental agreement stipulated that the car was to be returned on May 27, 1969, and required a deposit of $100.00 to be paid in advance. On May 17, Hull left Covina, California in the rented car and drove it to Erwin, Pennsylvania where his two children resided.

* Of the Third Circuit, sitting by designation.

The trip lasted three days, and he arrived in Erwin on May 20, 1969. On May 23, 1969 he left Erwin accompanied by his children, and drove the car to Houston, Texas. He arrived in Houston on May 31 and rented an apartment for which he signed a one year lease using the assumed name of John Paxton.

On June 13, 1969 Hull was arrested in Bellaire, Texas, a suburb of Houston, for making an illegal left turn. Because he displayed a California driver's license and drove an automobile with a California license plate, Officer Emmott of the Bellaire Police Department directed Hull to follow him to the Bellaire police station to post bond. At the police station Officer Emmott searched Hull's vehicle without a warrant or permission and discovered two pistols in the glove compartment. This discovery resulted in Hull's prosecution and conviction for illegal possession of firearms in the state court of Texas, but the pistols were not introduced at Hull's federal trial for violating the Dyer Act.[1]

Following the illegal search of the car, Officer Emmott escorted Hull into the police station. There he was placed in custody since he was unable to post the $10.00 necessary for bond on the traffic violation. While the automobile driven by Hull was in the police station parking lot, Officer Emmott obtained its license plate number and vehicle identification number. He then contacted the National Crime Information Center, and after receiving information from the Center the Bellaire Police Department called Russ Davis Ford in Covina, California. This call revealed that the car had been rented from that company by Hull and that it had not been returned on the due date. Thereafter, the Federal Bureau of Investigation was notified, and Hull was eventually charged and convicted of the Dyer Act violation from which this appeal was perfected.

In our review of the findings of the trial court our task is to determine whether such findings are supported by any substantial evidence. It is not our function to make credibility choices or to pass upon the weight of the evidence. The test is whether the evidence is sufficient to justify the trial judge, as a reasonable man, in concluding beyond a reasonable doubt that the defendant was guilty, and that such evidence is inconsistent with any reasonable hypothesis of his innocence. Such is the substantial evidence test.[2]

Appellant insists on appeal that the evidentiary product of an illegal search triggered the investigatory sequence leading to the information that the automobile had been reported stolen. He argues that "but for" the suspicion aroused by the discovery of the pistols in the illegal search of the car, the Bellaire police would not have verified the fact that he had rented the vehicle in California, an extraordinary procedure for a minor traffic violation case. He contends, therefore, that all of the evidence uncovered subsequent to the illegal search was tainted as the "fruit of the poisonous tree."[3]

---

1. With respect to the search, the district court found:

    [T]he police officer made an illegal search of the vehicle in that he looked in the glove compartment although there was nothing in the car, or nothing about Mr. Hull that aroused his suspicions, he did look in the glove compartment and did find pistols. The pistols were not introduced. The Court does not take that into consideration. But it was an illegal search; the illegal search does not get to the heart of the offense but merely a perimeter matter and Mr. Hull was not charged with anything relating to the illegal search.

    It should be observed that we are not concerned in the slightest degree with the state court conviction or with the evidence leading thereto.

2. Battles v. United States, 388 F.2d 799, 802 (5th Cir. 1968) ; Government of Virgin Islands v. Lake, 362 F.2d 770, 775 (3d Cir. 1966) ; De Luna v. United States, 228 F.2d 114, 116 (5th Cir. 1967) ; Jelaza v. United States, 179 F.2d 202, 204–205 (4th Cir. 1950) : Wright, Federal Practice and Procedure § 374 (1969).

3. Wong Sun v. United States, 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1961).

**4**

■ Admittedly, the warrantless search of the car in the police station parking lot was illegal as found by the district court.[4] With that fact in mind, we agree with the contention that the government could not use evidence obtained in that search or evidence obtained through leads developed from the unlawfully obtained evidence.[5] However, the record clearly shows that neither the pistols, nor any other evidence obtained from the illegal search were introduced at the trial. Moreover, the trial court specifically found that the vehicle identification information that led directly to the conviction under review resulted from an independent source which was unrelated to the unlawful conduct.[6] We are not able to say that such a finding is not amply supported by substantial evidence. The information was produced by routine police procedures followed when a driver is arrested while driving an out-of-state car and using an out-of-state driver's license in the circumstances disclosed. Although the record is not clear whether the publicly displayed license plate number or the less exposed vehicle identification number, or both, were used to ascertain the facts surrounding Hull's possession of the car, the arresting officer was clearly entitled to procure this information pursuant to his investigation of the traffic violation.[7] In United States v. Johnson[8] we held that:

> [I]nspections of motor vehicles performed by police officers, who were entitled to be on the property where the vehicles were located, which in no way damaged the vehicles and were limited to determining the correct identification numbers thereof were not searches within the meaning of the Fourth Amendment; and that alternatively, if either of such inspections constituted a Fourth Amendment search, then no search warrant was necessary because such inspections were reasonable and did not violate the right of the people to be secure in their persons, houses, papers or effects.

We conclude that evidence of the vehicle identification came from an independent, lawful source wholly apart from the unlawful search and, therefore, such information together with other facts obtained by its use were properly admitted by the district court.[9]

■ Appellant also contends that the court erred in overruling his motion for acquittal because the government did not prove the ownership of the automobile in question. He points out that the government's evidence did not establish that Russ Davis Ford was the owner of

4. See: Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Barnett v. United States, 384 F.2d 848, 859 (5th Cir. 1967) rehearing denied 391 F.2d 931; Henry v. Williams, 299 F.Supp. 36, 45 (N.D.Miss.1969). But cf. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, 427 (1970) where a warrantless search of a car after it had been taken to the police station did not violate the Fourth Amendment. There the arresting officer had probable cause for believing that the vehicle carried contraband or illegal merchandise.

5. See Walder v. United States, 347 U.S. 62, 64, 74 S.Ct. 354, 98 L.Ed. 503 (1953).

6. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920) established the well recognized exception to the rule of inadmissibility of evidence obtained from an illegal search where it is established that the challenged evidence resulted from independent means sufficiently distinguishable to be purged of the primary taint. See: Weaver v. United States, 374 F.2d 878, 881 (5th Cir. 1967); United States v. Paroutian, 299 F.2d 486, 489 (2d Cir. 1962).

7. United States v. Polk, 433 F.2d 644 (5th Cir. 1970); United States v. Johnson, 413 F.2d 1396 (5th Cir. 1969), affirmed en banc, 431 F.2d 441; United States v. Smith, 423 F.2d 1357, 1359 (5th Cir. 1970); Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967).

8. 431 F.2d 441 (5th Cir. 1970) (En Banc).

9. See: Etheridge v. United States, 380 F.2d 804, 808 (5th Cir. 1967). See also: Weaver v. United States, 374 F.2d 878, 881–882 (5th Cir. 1967); Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967).

the automobile, but only that Russ Davis Ford rented the automobile to him. From this observation, he argues that formal proof of ownership in another is an essential element in a Dyer Act conviction. We do not agree. Since United States v. Turley [10] it has been settled that the Dyer Act was never intended to incorporate or to depend upon technical property concepts. Instead it was broadly intended to deal with knowing interstate transportation following any unlawful taking; [11] it proscribes felonious interference with legal possession.[12]

In this case the record clearly shows that the vehicle was originally in the legal possession of Russ Davis Ford. An employee of Russ Davis Ford who worked in the rental department testified as to the facts surrounding the rental of the car to Hull. She identified Hull and produced a copy of the rental agreement signed by him. According to her testimony, her company received a report from the Bellaire Police Department that they had impounded the automobile and it was returned to Russ Davis Ford. This witness referred to the vehicle as "our car". The foregoing evidence was undisputed. No additional evidence was necessary. Moreover, in the circumstances disclosed by the record we doubt that Hull is in a position, on this appeal, to dispute the ownership of Russ Davis Ford in view of his execution of a formal written lease agreement and the deposit of $100.00 in order to obtain possession of the vehicle.

As a final contention appellant insists that the evidence was insufficient to show that he intended to steal the automobile. It is true that he legally rented the car and paid a substantial amount on the rental contract. Nevertheless, the offense is committed, even though possession of the automobile is lawful in the first instance, if the intent to steal arises at some later time, and subsequently, the car is transported in interstate commerce.[13] To prove the felonious intent when the vehicle has been lawfully obtained, it is proper to look at all of the facts and circumstances to ascertain if the accused did have the intent to steal the car or to retain unlawful possession of it.[14] On May 16, 1969 Hull rented the automobile in question from Russ Davis Ford for a stipulated period beginning May 16, 1969 and ending May 27, 1969. On May 27 when the car was due in Covina, California, Hull was en route to Houston, Texas. On May 31, 1969 with the car already four days delinquent, Hull, now in Houston and using an assumed name, leased an apartment for a one year period. On June 13 when he was arrested, he still had possession of the vehicle. Based on these established facts, it is our opinion that the evidence was sufficient to warrant the finding by the trial court that Hull intended to convert the automobile to his own use and thereafter transported it in interstate commerce.

Affirmed.

10. 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957).

11. United States v. Bruton, 414 F.2d 905, 908 (8th Cir. 1969); United States v. Dillinger, 341 F.2d 696, 697 (4th Cir. 1965); Patterson v. United States, 324 F.2d 310, 311 (5th Cir. 1963); Brown v. United States, 277 F.2d 201, 203 (8th Cir. 1960).

12. Girton v. United States, 383 F.2d 404 (9th Cir. 1967).

13. United States v. Ryan, 415 F.2d 847 (5th Cir. 1969); Patterson v. United States, 324 F.2d 310, 311 (5th Cir. 1963); United States v. Welborn, 322 F.2d 910, 911 (4th Cir. 1963); Jarvis v. United States, 312 F.2d 563, 564 (9th Cir. 1963).

14. United States v. Richards, 425 F.2d 432, 435 (5th Cir. 1970); Johnson v. United States, 384 F.2d 388, 389 (10th Cir. 1967).