**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ottis Mayo JONES, Defendant-Appellant.**

No. 71–1263
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 14, 1972.

Rehearing Denied April 7, 1972.

S. Gunter Toney, Tallahassee, Fla. (Court Appointed), for defendant-appellant.

William Stafford, U. S. Atty., Pensacola, Fla., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

* [1] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir., 1970, 431 F.2d 409, Part I.

RONEY, Circuit Judge:

Ottis Mayo Jones was convicted under a three count indictment charging him with uttering three forged United States Postal Money Orders, in violation of 18 U.S.C. § 500. On this appeal he claims first that evidence obtained through an illegal search and seizure was used to convict him, and second that his rights under the Sixth Amendment were violated by the government's failure to provide him with a speedy trial. We find that neither of these contentions is supported by the record and affirm appellant's conviction.

### The Facts

On February 15, 1969, three stolen postal money orders were cashed in Tallahassee, Florida, at two motels and a clothing store. The money orders were payable to "Thomas O. Peters" and were cashed by a man who identified himself by means of a Carte Blanche credit card issued in the name of Thomas O. Peters.

Exactly one week later appellant Jones attempted to cash a postal money order at an A & P grocery store in Knoxville, Tennessee. This money order was also payable to Thomas O. Peters and a Carte Blanche credit card bearing that name was given to the store manager. The manager checked the serial number of the money order and discovered that it was stolen. He kept the money order and called the police. Jones, meanwhile, retrieved the credit card, left the store and drove away.

The store manager was able to give the police the make, model and license number of the car Jones was driving. Shortly after this information was broadcast over the police radio, an officer stopped Jones' car. The officer asked Jones his name and Jones replied, "Thomas O. Peters." While the police officer was reporting this information to headquarters, Jones fled in the car. He was caught a few blocks away and placed under arrest.

After the arrest, the car was searched at the police station and a quantity of physical evidence was seized. Among the items found in Jones' car were a number of stolen money orders, room keys to the two Tallahassee motels where stolen money orders had been cashed on February 15th, and a brown suit which had been purchased at the clothing store in Tallahassee with a stolen money order.

When Jones was tried in Tennessee for attempting to cash the stolen money order at the A & P, the district court ruled that the items taken from his car were obtained with an invalid search warrant and not admissible in evidence, following Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Nonetheless, Jones was convicted and the Court of Appeals for the Sixth Circuit affirmed. United States v. Jones, 438 F.2d 1199 (6th Cir. 1971).

After this Tennessee trial, Jones was convicted in the Northern District of Florida of passing the three stolen money orders in Tallahassee. It is from this conviction that he now appeals.

### Search and Seizure

Jones first argues that the evidence seized in the search of his car in Tennessee was used in his Florida trial. Although the district judge denied a motion to suppress this evidence on the ground that the Tennessee search was valid under Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), it is not necessary for us to consider appellant's attack on this ruling because the record shows that none of this evidence was introduced in the Florida trial. The only piece of evidence introduced below which had ever been in the hands of the Knoxville police was the Carte Blanche credit card. The court below found that the credit card was not obtained during the search of Jones' car, but fell out of his pocket while he was being transported to the police station after his arrest. This finding is not clearly erroneous. Therefore, the motion to suppress was properly denied. United States v. Ogle, 418 F.2d 238 (5th Cir. 1969); United States v. Montos, 421 F.2d 215 (5th Cir. 1970).

Jones next contends that his indictment should have been dismissed because evidence seized in Tennessee provided leads which connected him with the money orders passed in Tallahassee. He says that this enabled the government to try him and that his conviction is tainted by the "fruit of the poisonous tree" doctrine.

■■ However, even without the evidence found in the car, there was evidence to link Jones with the money orders cashed in Tallahassee. The Carte Blanche credit card, the money order which Jones left with the A & P store manager, and his statement to the Knoxville police officer that his name was Thomas O. Peters, all provided ample evidence to link Jones to the credit card and money orders in the same name used in Tallahassee. As stated before, the Carte Blanche card fell from Jones' pocket. The money order was not seized at all but was turned over to the police by the store manager, a private citizen, so that the Fourth Amendment does not apply. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). The district court correctly ruled that *Miranda* warnings did not have to be given before the Knoxville police officer asked Jones his name. United States v. LeQuire, 424 F.2d 341 (5th Cir. 1970). The authorities having been led directly to the Tallahassee offenses by evidence legally obtained, it is of no consequence that illegally obtained evidence would also have led to those crimes. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); United States v. Hull, 437 F.2d 1 (5th Cir. 1971); Weaver v. United States, 374 F.2d 878 (5th Cir. 1967).

### Speedy Trial

Jones was indicted on May 6, 1969, but not brought to trial in Florida until December 8, 1970. He contends that he was thus denied the speedy trial guaranteed to him by the Sixth Amendment to the United States Constitution.

■■ During the eight months following Jones' indictment, pre-trial motions were filed by both sides. This pretrial activity terminated in January, 1970, with the completion of a psychiatric examination of the defendant. During the next nine months not a single docket entry was made. Neither side has explained to us the reason for this long hiatus in the proceedings. On September 10, 1970, Jones filed a motion to dismiss the indictment. This motion was denied. On October 26, he filed a motion for trial or dismissal. He was brought to trial seven weeks after the filing of this motion.

We have previously held, in cases in which the delay was not unreasonably long and in which there was no showing of prejudice resulting from the delay, that a defendant cannot object on Sixth Amendment grounds to any delay occurring prior to his demand for a speedy trial. United States v. Evans, 436 F.2d 1305 (5th Cir. 1971); United States v. Grimes, 426 F.2d 706 (5th Cir. 1970); Harlow v. United States, 301 F.2d 361 (5th Cir. 1962), cert. den., 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56.[1] Jones was brought to trial within two months of October 20, 1970, the date on which he filed a motion for trial or dismissal. He cannot now complain about the period of delay prior to that, unless he can demonstrate that he suffered some prejudice because of the delay. We think he has failed to make this demonstration.

He has argued that his ability to present his defense was prejudiced by the fact that one of his potential witnesses died while he was awaiting trial. We find from the record [2] that Jones intended to call this witness for the purpose of

[1]. In Murray v. Wainwright, 5th Cir. 1971, 450 F.2d 465 [1971], defendant's trial was delayed for five years and a showing of prejudice was made. We held that there had been no waiver of Sixth Amendment rights.

[2]. The facts were developed at a pretrial hearing.

establishing an entrapment defense. Jones' court-appointed counsel advised him, however, that it would be inadvisable and, in fact, highly dangerous to present this entrapment defense to the jury. The record reveals that this advice was sound, for the testimony the deceased witness would have given, as Jones explained it, would unquestionably have aided the prosecution more than the defense. See United States v. Evans, *supra*. Appellant has not shown that there was any "reasonable likelihood" that his defense was prejudiced. United States v. King, 431 F.2d 734 (5th Cir. 1970).

■ While he was awaiting trial in this case, Jones was serving time in prison under two other federally-imposed sentences. His personal rights, therefore, were not infringed by his being incarcerated during the period of delay prior to trial. McLeod v. United States, 5th Cir. 1971, 455 F.2d 933 [1971].

We have carefully reviewed each argument made in appellant's brief and find no basis for reversal of his conviction.

Affirmed.