UNITED STATES of America,
Plaintiff-Appellant,

v.

Salvatore CASTELLANA, a/k/a Sam
Castellana, Defendant-Appellee.

No. 73–2259.

United States Court of Appeals,
Fifth Circuit.

Sept. 6, 1974.

John L. Briggs, U. S. Atty., Harvey E. Schlesinger, Asst. U. S. Atty., Jacksonville, Fla., Claude H. Tison, Asst. U. S. Atty., Tampa, Fla., Mervyn Hamburg, Dept. of Justice, Crim. Div., Washington, D. C., for plaintiff-appellant.

Henry Gonzalez, Thomas J. Hanlon, Tampa, Fla., for defendant-appellee.

Before BROWN, Chief Judge, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges, and INGRAHAM,* Senior Circuit Judge.

GEE, Circuit Judge:

The United States appeals from suppression [1] of two answers and four pistols as evidence in Castellana's trial

---

* Judge Ingraham sat as a member of the original panel in this case and thus was a member of the en banc court.

1. By the trial court, affirmed by a panel of this court. 488 F.2d 65 (5th Cir. 1974).

for possessing, as a convicted felon, firearms transported in interstate commerce. 18 U.S.C. App. § 1202(a). In main, we reverse.

On August 4, 1972, Castellana was running a drive-in grocery in Tampa, Florida, on premises comprising a main business room about twenty by forty feet in area with an eight by ten office in the rear and another back room. Suspecting gambling there, F.B.I. agents obtained valid search warrants for the store and for Castellana's person. About six p. m. the next day twenty agents in mufti went to the store, where they saw Castellana peering at them from just inside the front door, which he then locked. The lead agent identified them as F.B.I., announced he had a search warrant, and called on Castellana to open up. Instead Castellana backed away and the agents broke in, while Castellana stood a few feet inside and others were seen screaming and running about. Agent Smith, assigned to search Castellana's person, asked him to go with him to the back room but did not arrest him. He consented to and did so. Smith testified he wished to adjourn to the back office because of the pandemonium in the front room and his belief that an amount of money would be found there which he wished Castellana to count and verify. Agent Arwine followed.

As Castellana halted about four feet from his desk and Smith prepared to read the warrant, Arwine suddenly asked Castellana whether he had any weapons within reach. Castellana replied that he did, pointing to a drawer in the desk. Arwine took four handguns from the drawer, one of which occasioned Castellana's present indictment, and asked Castellana where he got them.

Castellana answered that he took them in on a loan. Smith then read the warrant and advised Castellana of his *Miranda* rights, which he refused to waive. The four handguns were unloaded and placed on the desk and the search of defendant and the store carried out.[2] At no time was anyone arrested.

■ Assuming Castellana was "in custody" under inherently coercive conditions when Arwine asked his questions, *Miranda* was not infringed, for Arwine was not interrogating Castellana in an attempt to elicit evidence of a crime.[3] The safety of the operation was Arwine's primary concern, he testified, and the very form of his first inquiry—weapons within reach—shows it was limited to this proper concern. No rational investigatory purpose could have prompted such a question about premises which the agents were already authorized to, intended to, and did search. Nor is there any indication of devious intent by the agents to achieve an investigatory end by means masquerading as security measures; such activities might be made short work of.

Presented instead is a bona fide and minimally offensive security measure in the line of Terry v. Ohio[4] but less intrusive or demeaning than the "stop-and-frisk" procedure on less than probable cause there sanctioned, a mild and distant cousin to the searches incident to lawful arrest approved in *Gustafson* and *Robinson*.[5] We find ourselves unable to condemn, after the fact and on grounds of some delicacy, such mild prophylactic measures reasonably calculated to ensure the safety of the officers, the suspect, and others on the scene as well. To be sure, the court below concluded that the agents did not feel physically threatened by Castel-

---

2. Producing evidence which resulted in a gambling indictment.

3. There was evidence that the agents did not know in advance of the guns' existence, and none that they were seeking to incriminate Castellana by the inquiries.

4. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

5. Gustafson v. Florida, 414 U.S. 260, 94 S. Ct. 488, 38 L.Ed.2d 456 (1973); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

lana,[6] but in our view the mild measures adopted were justified by a reasonable prudence under the circumstances and did not require an actual fear of imminent harm to validate them.

■■ Our holding, like the familiar "plain-view doctrine," follows from the obvious principle that evidence discovered by the police in the course of doing what they have a right to do is not subject to suppression.[7] Arwine's inquiry about the gun's source falls outside this rationale, however, and that inquiry, as well as Castellana's answer to it, were properly suppressed.

Affirmed in part, reversed in part.

THORNBERRY, Circuit Judge, with whom WISDOM, GOLDBERG, GODBOLD and MORGAN, Circuit Judges, join (dissenting):

I dissent. The majority opinion engages in fact-finding at the appellate level and draws an inappropriate analogy with Terry v. Ohio[1] to provide policy support for its views.

The majority reasons that Miranda[2] is inapplicable because Agent Arwine did not interrogate Castellana when he inquired whether any weapons were nearby. The question did not constitute interrogation, we are told, because Arwine did not ask it "in an attempt to elicit evidence of a crime." Assuming that the majority has hit upon a satisfactory definition of interrogation, I cannot agree with its reasoning; it presumes to find as a fact that Arwine

asked about the guns for safety reasons. In the first place it is not the function of this court to find facts. Second, the "safety purposes" theory conflicts with the lower court's finding that the agents did not feel physically threatened or endangered by Castellana. To say that a question is asked for safety purposes assumes that there is a perceived danger present. To justify intrusions on the basis of self-protection when there is no perceived danger is like excusing a killing as self-defense when the killer knew his victim was unarmed, peaceful and harmless. Such reasoning invites police misconduct.

Nor can the majority find comfort in Terry v. Ohio; the analogy will not withstand inspection. First, Terry is a search and seizure case; this case involves a different constitutional amendment and a different type of intrusion, compelled self-incrimination. Second, the Supreme Court specifically limited Terry's holding to situations in which a police officer reasonably concludes "that the persons with whom he is dealing may be armed and presently dangerous." 329 U.S. at 30, 88 S.Ct. at 1884. In this case the lower court found there was "no evidence introduced at the hearing on the motions to suppress which indicates any reason to believe that the defendant posed any physical threat to the agents' safety." The majority did not vacate that finding as clearly erroneous. If the agents believed Castellana was harmless, I cannot understand what "circumstances" supposedly "validate" Arwine's question. Terry's holding is predicated on a perceived risk of harm;

6. Though its reasoning in some degree escapes us, based as it is partly on the court's observation that since the agents placed the pistols on the desk before Castellana and left them there during the search, they could not have been in fear that he would use them. Before this was done, however, they had been unloaded. And one of the agents testified that he did feel the circumstances indicated possible danger, though not from Castellana acting *alone*.

7. As to the guns themselves, we note also that the Supreme Court has never, though

offered the opportunity to do so in Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L. Ed.2d 311 (1969), extended *Miranda* to the "fruit" of in-custody investigations made without the prescribed warnings. Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974, White, J., concurring).

I. Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

2. Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

it mentions no other circumstances justifying intrusive safety precautions.

For these reasons I must conclude that the majority, without support from the case law[3] or the record, has sanctioned an unjustified omission of *Miranda's* safeguards.

3. The majority makes an enigmatic reference to Gustafson v. Florida, 1973, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 and United States v. Robinson, 1973, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. With all deference I am compelled to point out that this court appears to be falling into a habit of making enigmatic references to those two cases when such references are neither necessary nor relevant to the outcome of the case before it. *See* United States v. Soriano, 497 F.2d 147 [5th Cir., 1974, p. 150]