**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Hector de Leon MARTINEZ,
Defendant-Appellant.**

**No. 74–2346.**

United States Court of Appeals,
Fifth Circuit.

May 12, 1975.

Guadalupe Salinas, Asst. Dist. Atty., Houston, Tex. (Court-appointed), for defendant-appellant.

William S. Sessions, U. S. Atty., John Pinckney, III, Joel D. Conant, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before RIVES, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

This is an appeal from a conviction of unlawful reentry by a deported alien, 8 U.S.C. § 1326. After evidentiary hearing the trial court denied appellant's pretrial motion to suppress his oral admissions and evidence allegedly gathered as the fruit of those admissions. The admissions were not introduced as probative of guilt, but the alleged fruits thereof were introduced.

In January 1974 appellant was in the Bexar County, Texas, jail on a state charge unrelated to this appeal. Pursuant to booking procedures at that jail, state officers made several inquiries of each prisoner for purposes of identification, including his name and place of birth. This information was entered on a "booking slip."

A United States Immigration and Naturalization Service officer was assigned to the jail and was furnished daily with a computer printout of information from the booking slips, including for each person the country stated to be the place of his birth. The officer's duties included reviewing the bookings in search of persons who might be aliens, with the ultimate purpose of inquiring into the possibility of their having violated federal criminal statutes relating to aliens. If his suspicions were triggered with respect to a prisoner, the officer interrogated him. A primary purpose was to identify the suspect, since many aliens in the area disguise their identities to avoid detection. In many instances it is necessary to obtain fingerprints to get an accurate identification.

Under the interrogation procedure employed, the suspects—often 20 to 40 per day—usually were assembled in small groups at the jail and the members of the group were asked to state the respective countries of which each was a citizen. If a suspect responded that he was a citizen of a country other than the United States, the officer asked him no further questions but took him to his office where he had a telephone. He attempted to locate an I.N.S. file on the suspect. He advised the suspect of his *Miranda* rights and, if the prisoner signed a waiver, continued the interrogation.

With respect to appellant, the I.N.S. officer's suspicions were aroused by several factors. The booking slip showed his place of birth as Mexico, the amount of his bond was high (implying fear of flight), and there was a notation on the slip, apparently made by the arresting officer, to "hold for immigration." The notation indicated to the I.N.S. officer that the arresting state officer considered that immigration officials "would be interested in this person."

At the request of the I.N.S. officer, and pursuant to the usual custom, appellant was brought to the location in the jail where persons suspected to be aliens were interviewed. Probably appellant was in a group of three or four persons who were questioned together. When the group were asked of what country each was a citizen Martinez responded "Mexico" and then nonresponsively added that he was an alien illegally in the United States. The officer then advised Martinez of his *Miranda* rights and presented to him a form which Martinez signed, indicating that he understood such rights and was waiving them.

Subsequently, around February 10 or 11, the custodian of I.N.S. records in San Antonio searched for and located the file on Hector de Leon Martinez, which is appellant's name. He testified that he had no reason to locate the file unless asked to do so, and that he searched for it upon request and as a result of the investigation at the jail. The file revealed that in January 1972 a person named Hector de Leon Martinez had been formally deported from the United States. Examination of the file revealed no application to reenter the United States. A signature in the file purporting to be that of the deported person was turned over to Bexar County officials for comparison with the signature of appellant.

Meanwhile on February 6 the state charges against appellant had been dismissed and he was retained in custody under a federal "hold." Around February 11 the United States initiated the criminal charge of reentry, based in part upon the contents of the file.

In the non-jury trial it was necessary for the government to establish that appellant was the same person as the Hector de Leon Martinez who had been deported in 1972. For that purpose the prosecution offered the testimony of an expert that the signature of appellant on a document executed pursuant to his state booking in January 1974 was the same as that on documents in the file dated 1972. Appellant's nonresponsive statement to the I.N.S. officer that he was illegally in the United States was not offered to show guilt.

Citizenship of a suspect is an initial threshold that must be traversed en route to possible deportability and to criminal charges of illegal entry.[1] The government in brief states that "probably [appellant] should have been warned" before being asked to state the country of which he was a citizen. It is not necessary, however, that we decide that issue, and we leave it for another day.

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959). We think it clear that the narcotics were "come at by the exploitation of that illegality" and hence that they may not be used against Toy.

Wong Sun v. United States, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963). Assuming without deciding that *Wong Sun* is applicable to the fruit of in-custody interrogation without the prescribed warnings, *see* United States v. Castellana, 500 F.2d 325 n.7 (CA5, 1974), we conclude that the I.N.S. file on appellant was not "come at by the exploitation" of asking appellant the country of his citizenship. The file already existed, and it was located in the records of the same government agency and in the same city. I.N.S. already knew appellant's full name and knew that he was born in Mexico. Their attention already was focused upon him by reason of these facts plus the high bond and the notation by the arresting officer. The purpose, the structure, and the implementation of the entire procedure involved support the testimony of the I.N.S. officer that in any event he would have called on the custodian of I.N.S. records for the file, if any, on Hector de Leon Martinez.

We do not stand on a plenary "inevitable discovery" rule but rather upon the test of *Wong Sun* itself, which recognizes that the central inquiry is exploitation of improper action and not the mere existence of impropriety, and, indeed, recognizes that even if there is a causal connection in a "but for" sense it does not necessarily rise to the level of exploitation of illegality.

In United States v. Hull, 437 F.2d 1 (CA5, 1971), the defendant was arrested by Texas state officers for making an improper left turn. Because he had a California driver's license and California plates he was taken to the station house to post bond. There his car was illegally searched and pistols were found. Officers then examined the car again, obtained its license plate and vehicle identification numbers, contacted the National Crime Information Center, and discovered that the car was stolen. The

---

1. The District Judge expressed his concern at possibly burdening I.N.S. officers with the necessity of giving *Miranda* warnings as a prerequisite to investigational activity. In-custody interrogation of persons on whom suspicion already has focused is, of course, to be distinguished from non-custodial investigatory questioning.

defendant was then charged under the Dyer Act. The pistols were not introduced in evidence. He appealed from conviction on the ground that the illegal search triggered the discovery that the car was stolen. We affirmed, saying:

> The information was produced by routine police procedures followed when a driver is arrested while driving an out-of-state car and using an out-of-state driver's license in the circumstances disclosed.

437 F.2d at 4. The instant case is even clearer, because the routine police procedures were in-house procedures of I.N.S. at San Antonio relating to precise information in its own possession. *See also,* United States v. Jones, 457 F.2d 697 (CA5, 1972), and Weaver v. United States, 374 F.2d 878 (CA5, 1967).

The claim that appellant was illegally arrested is without merit.

Affirmed.

GEE, Circuit Judge (concurring):

While appellant was in custody on a state charge an immigration officer routinely asked him his nationality. Mexico, he answered responsively, and added, not responsively, that he was in the United States illegally. Appellant claims the information that he was in the United States illegally, obtained from him without his having been given *Miranda* warnings, was employed to locate the INS file on him, and that the file is therefore to be seen as "fruit of the poisonous tree." The evidence of appellant's response was not introduced at trial but portions of the file were.

Though I am in general agreement with the majority opinion, I would decide no more than that since the information that appellant was in the country illegally was volunteered *Miranda* is inapplicable. Bishop v. Wainwright, 511 F.2d 664 (5th Cir.) [1975]; *cf.* United States v. McDaniel, 463 F.2d 129 (CA5 1972); United States v. LaMonica, 472 F.2d 580 (CA9 1972). And while I agree with the majority's resolution of the *Wong Sun* problem, I am doubtful that one is presented. As we recently noted en banc, United States v. Castellana, 500 F.2d 325, 327 n. 7 (5th Cir. 1974), the Supreme Court has never extended *Miranda* to the fruit of in-custody interrogations made without requisite warnings. I see no present trend to expand *Miranda*; rather, if anything, the contrary. See Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).