[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11302
Non-Argument Calendar

_____

D.C. Docket No. 2:13-cr-00005-WCO-JCF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALI HASSAN FREEMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 5, 2014)

Before HULL, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Wali Hassan Freeman appeals his conviction and 108-month sentence for

possession of a firearm by a convicted felon.  We affirm Freeman's conviction and

sentence, but remand for the limited purpose of correcting clerical errors in the judgment of conviction.

## I. BACKGROUND

On January 28, 2013, at approximately 12:30 a.m., Freeman was driving southbound on the Thompson Bridge Road in Gainesville, Georgia.  Officer Carlo Miller of the Gainesville Police Department stopped him, because Freeman had failed to dim his high beams within 500 feet of Officer Miller's car.  Before activating his blue lights, Officer Miller asked the radio dispatcher to check Freeman's license-plate number.  After Officer Miller activated his lights, Freeman "hit his brakes and then continued on, hit his brakes, continued on."  ROA at 76.  Freeman passed two access roads and eventually stopped in a church parking lot.  Before stopping, Freeman extended his head out of his window more than once, which, Officer Miller thought was unusual.

While Officer Miller was returning to his car after retrieving Freeman's identification, the dispatcher asked: "Are you clear for traffic?"  ROA at 77 (internal quotation marks omitted).  This phrase informed Officer Miller of a possible existing warrant, based on Freeman's license-plate number.  The dispatcher also gave Officer Miller a description of the subject of the warrant, which matched Freeman.  Officer Miller then provided Freeman's driver's license

2

information to the dispatcher, who confirmed the existing warrant. Two other officers arrived at the scene.

Officer Miller returned to Freeman's car, asked him to exit the car, told him of the warrant, and placed him in handcuffs. Officer Miller then asked Freeman "if he had anything on his person, if he had any weapons, needles or anything like that." ROA at 79. Freeman initially hesitated, which caused Officer Miller to be concerned. When Officer Miller again asked whether Freeman was carrying any weapons, Freeman responded he had a weapon in his waistband; Officer Miller removed a gun from Freeman's waistband.

A federal grand jury indicted Freeman for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).[1] Freeman moved to suppress several items, including a gun, ammunition, and three "baggies" of marijuana seized from him during a traffic stop on January 28, 2013, as well as any statements attributed to him on that date.

Officer Miller testified to the facts, and the magistrate judge admitted into evidence an audiovisual recording of the traffic stop. During cross-examination, excerpts of the recording were played. In the recording, the squad car's blue lights were activated at 12:33:03 a.m. Freeman's car left the road and entered a church parking lot at 12:33:39 a.m. During the time between the blue lights being

---

[1] The parties agreed during Freeman's plea proceeding that he was not subject to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

3

activated and the officers first speaking to Freeman, several unintelligible radio communications occurred. At 12:34:54 a.m., the dispatcher stated: "Clear for traffic." *See* Gov't Exh. 1 at 3:28. Several seconds later, the dispatcher provided an unintelligible report followed by Freeman's name, height, weight, hair, and eye color. Additional unintelligible information followed.

Two officers approached Freeman's car, directed him to exit the car, informed him of an outstanding warrant, and placed him in handcuffs. While Officer Miller and Freeman discussed his failure to dim his lights, two brief, unintelligible sounds were heard in the background. Several seconds later, the dispatcher provided another unintelligible report followed by: "Be advised, [unintelligible] has a history of obstruction on an officer. [Unintelligible.]" *See* Gov't Exh. 1 at 5:26-5:45. More unintelligible communications occurred during and after the search of Freeman, when the gun was discovered.

During cross-examination, Officer Miller testified he did not learn of the warrant until he retrieved Freeman's driver's license and returned to his squad car. Before he placed Freeman in handcuffs, Officer Miller knew only of the possibility of a warrant, although he was fairly certain Freeman was the subject of the warrant from the description of the dispatcher. Officer Miller had not advised Freeman of his *Miranda*[2] rights before asking whether he was carrying a weapon. Based on

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

4

Officer Miller's experience, Freeman's hesitation indicated the possible presence of a weapon.

During re-direct examination, Officer Miller testified he received confirmation of the outstanding warrant as Freeman exited his car, before the pat-down search began.  The following exchange ensued:

Q.  Was it confirmed before you actually placed him into handcuffs?

A.  Yes, I believe so.

Q.  Sometime in that timeframe?

A.  That's right. Because there [were] a lot of things happening within that timeframe.

ROA at 54.  The magistrate judge admitted into evidence a warrant for Freeman's arrest issued on March 9, 2010.

In a post-hearing brief, the government argued, regardless of the admissibility of Freeman's admission, Officer Miller found the gun as a result of a valid search incident to a lawful arrest based on the outstanding arrest warrant. The government further contended Freeman's admission he was carrying a gun was admissible under the public-safety exception to the *Miranda* requirements.

Freeman responded the record did not establish a lawful arrest before Officer Miller searched him.  According to Freeman, Officer Miller had testified inconsistently regarding whether he had received confirmation of the warrant before placing Freeman in handcuffs and searching him.  The video recording

5

contained no confirmation of a warrant, when Freeman exited his vehicle. Because the record did not show the warrant had been verified before his arrest, Freeman argued the government had not met its burden of proof.

Freeman further contended the public-safety exception to the *Miranda* requirements was inapplicable. He argued none of the circumstances before the search suggested he posed a cognizable threat to anyone. He further asserted the record showed his admission he was carrying a gun was not voluntary, because he had been commanded out of his car, handcuffed, and surrounded by three officers. He claimed his hesitation in answering also showed the admission was not voluntary.

The magistrate judge issued a report and recommendation ("R&R"), recommending the district judge deny Freeman's motions to suppress the gun and his statement regarding the gun. The magistrate judge had relied primarily on Officer Miller's testimony, as "the sound quality of [the audiovisual] recording is somewhat poor, and it is not possible to understand all communications between Officer Miller and dispatch, and between Officer Miller and Defendant during the stop." ROA at 185 n.3. Regardless of whether the warrant was confirmed before Freeman was handcuffed, the magistrate judge concluded Officer Miller reasonably believed a warrant existed. Accordingly, it was reasonable to ask Freeman to exit his car and to restrain him while his criminal history was

6

investigated. Once the warrant was confirmed, Freeman was arrested lawfully, which authorized the search that revealed the gun.

The magistrate judge further determined Freeman's statement about the gun fell under the public-safety exception. The magistrate judge explained Freeman had hesitated before stopping his car when Officer Miller activated his blue lights, after which Officer Miller learned of a warrant for Freeman's arrest and "that [Freeman] had a history of obstruction of an officer, among other offenses." ROA at 187. Freeman's hesitation after being asked whether he was carrying weapons or needles led to a reasonable belief he was armed and further justified the follow-up question about weapons. The magistrate judge also concluded Freeman voluntarily stated he was carrying a gun. He was not threatened or coerced into making the statement, no promises were made in exchange for it, Officer Miller did not raise his voice, and no officers brandished their weapons.

Freeman objected to the R&R. The district judge overruled Freeman's objections, adopted the R&R, and denied Freeman's motions to suppress the gun and his statement. Thereafter, Freeman entered a conditional guilty plea to the charged count, while reserving his right to appeal the denial of his suppression motions.

Freeman's presentence investigation report ("PSI") stated three small, wrapped plastic baggies of alleged marijuana had been found in his car after his

arrest. The PSI also reported the gun found on Freeman had been loaded and wrapped in clear tape, with only the trigger and hammer exposed. Freeman had a base offense level of 24, under U.S.S.G. § 2K2.1(a)(2), because he had two prior, felony-controlled-substance convictions. The probation officer added four levels, under § 2K2.1(b)(6)(B), because Freeman had possessed a gun in connection with another felony, based on his possession of individually wrapped packages of marijuana, when he was stopped. The PSI also awarded a three-level, acceptance-of-responsibility reduction, under U.S.S.G. § 3E1.1, which yielded a total offense level of 25.

The probation officer calculated a criminal-history score of 11 and a criminal history category of V, based on three prior state convictions for possession with intent to distribute cocaine, as well as Freeman's commission of the subject crime, while on probation. The PSI states Freeman had been sentenced as a first-time offender in two of the prior drug cases. Following his most recent state controlled-substance conviction, Freeman had been released on parole in November 2008 and had been discharged from parole to probation in May 2010. He had been employed from November 2008 through July 2012, was unemployed from July 2012 through January 2013, and had worked for the county sanitation department for two weeks before his arrest.

8

Based on a total offense level of 25 and a criminal history category of V, the PSI calculated a Sentencing Guidelines range of 100-125 months of imprisonment. Freeman was subject to a statutory maximum prison term of ten years.[3] *See* 18 U.S.C. § 924(a)(2). Freeman objected to the four-level increase for possessing the gun in connection with another felony offense.

During his sentencing hearing, Freeman argued the evidence did not show he intended to distribute the marijuana found in his car, because it was likely that the three baggies of marijuana were for personal use. He further alleged he had been on his way to a midnight-to-6 a.m. work shift, when the officers stopped him. In 2010, he had been the victim of a home-invasion robbery, when three men had entered his home at night and tied him. As a result, he had become hyper-vigilant and began carrying a gun.

The government responded that the presence of three packages of marijuana was sufficient to show an intent to distribute. Such a finding was further supported by Freeman's criminal history, which included three possession-with-intent-to-distribute convictions; his lack of employment for some time before his arrest; and the manner in which the gun had been taped to avoid fingerprints. The circumstances did not support Freeman's self-defense argument, because he

---

[3] Because of the statutory maximum 10-year sentence applicable to Freeman's § 922(g)(1) crime, his Guidelines range became 100 to 120 months. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2).

presumably did not work with a gun in his waistband.  The district judge overruled Freeman's objection and found a preponderance of the evidence supported Freeman's intention to distribute the marijuana.

Freeman argued his Guidelines calculations had included ten points for relatively old crimes that had occurred when he was much younger.  He alleged his upbringing had been marked by physical and verbal abuse, which had resulted in his removal from his home.  He also had been exposed to negative influences with regard to drug activity in his family.  Since his release from prison, he maintained he had worked consistently and was a different person than he had been in his youth.  He requested an 80-month sentence.  Freeman's sister told the judge she had seen a "big change," since Freeman's release from prison.  ROA at 326.  He had kept a job, had his own home, obtained a driver's license and a car, and had showed increased independence.

The government argued Freeman had been arrested, in part, because he had violated the terms of his state probation by failing to report to his probation officer. He would have been subject to a 15-year, mandatory-minimum sentence under the ACCA, had he not been sentenced under the Georgia first-offender statute in prior cases.  The government recommended a 108-month-imprisonment sentence.  After his parole had expired, Freeman represented he had failed to realize he needed to

keep reporting to an officer during the remaining probation period.  He had not

violated his parole before that time.

The district judge adopted the PSI as his facual findings and stated:

> The court has considered the Guidelines, considered the factors of [18 U.S.C. §] 3553, considered this a case in which the Guidelines are probably more applicable than I sometimes think they are, each of the factors an important factor for sentencing in a case such as this.  I think protection from society is also an important factor to be considered.

ROA at 331.  The judge sentenced Freeman to 108 months of imprisonment,

followed by 3 years of supervised release.  Freeman objected to the sentence as

substantively unreasonable and renewed his objection to the § 2K2.1(b)(6)(B)

enhancement.

On appeal, Freeman challenges the denial of his motions to suppress the gun

and his statement.  He also argues the judge improperly applied the sentencing

enhancement for possessing a firearm in connection with another felony offense,

and his sentence is substantively unreasonable.

## II. DISCUSSION

A. <u>Motion to Suppress the Firearm</u>

Freeman challenges the district judge's finding he had been arrested lawfully

at the time he was searched.  He contends the record does not support the

government's claim the existence of an outstanding warrant for his arrest had been

verified, when Officer Miller handcuffed and searched him.

We review a district judge's denial of a motion to suppress under a mixed standard: the judge's findings of fact are reviewed for clear error, and his application of the law to those facts are reviewed de novo. *United States v. Gordon*, 231 F.3d 750, 753-54 (11th Cir. 2000). When considering a ruling on a suppression motion, all facts are construed in the light most favorable to the prevailing party. *Id.* at 754. We may affirm for any reason supported by the record, even if not relied upon by the judge. *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012).

The exclusionary rule requires suppression of evidence obtained as a direct result of an illegal search or an invalid interrogation.[4] *United States v. Roper*, 681 F.2d 1354, 1358 (11th Cir. 1982). Under the inevitable-discovery doctrine, however, evidence obtained from an illegal search nevertheless is admissible if the prosecution can show by a preponderance of the evidence it "ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444, 104 S. Ct. 2501, 2509 (1984). This exception to the exclusionary rule requires a reasonable probability the evidence would have been discovered by lawful means that were being pursued actively before the illegal conduct occurred.

---

[4] The Fourth Amendment protects individuals from unreasonable searches and seizures by government authorities. *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989). A warrantless search of a person incident to a lawful arrest does not violate the Fourth Amendment. *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 477 (1976).

12

*Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004).[5]  Under the rationale

underlying the exclusionary rule and its exceptions, the prosecution is not to be put

in a better or worse position than it would have been if no illegality had occurred.

*See Nix*, 467 U.S. at 443-44, 104 S. Ct. at 2508-09.

A valid warrant for Freeman's arrest existed when Officer Miller searched

him.  Regardless of whether the dispatcher had confirmed the warrant before the

search, it is undisputed Officer Miller received that confirmation no later than

moments after the search.  It also is undisputed the confirmation already had been

set into motion by Officer Miller and the dispatcher before the search.  The

recording of the incident does not refute any of these facts, given the number of

unintelligible radio communications that occurred between the time Officer Miller

first spoke with Freeman, and Freeman was taken to the squad car.  There is more

than a reasonable probability the gun would have been discovered by lawful means

that were being pursued actively before the search.  *See Nix*, 467 U.S. at 444, 104

S. Ct. at 2509; *Jefferson*, 382 F.3d at 1296.  Consequently, the search was proper

either as a search incident to a lawful arrest, or under the inevitable-discovery

doctrine.  *See United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 477

(1976); *Jefferson*, 382 F.3d at 1296.

---

[5] *Cf. Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S. Ct. 2556, 2564 (1980) (explaining, where a "formal arrest followed quickly on the heels of" a challenged search, it is "not . . . particularly important that the search preceded the arrest rather than vice versa," where probable cause for the arrest existed independently of the search)

B. Alleged *Miranda* Violation

Freeman argues the district judge erred when he denied his motion to suppress his response to Officer Miller's questions regarding whether he was carrying a weapon, which Officer Miller asked before advising Freeman of his *Miranda* rights.  Freeman contends the public-safety exception to the *Miranda* requirements does not apply in this case, because he was in custody and in handcuffs during the questioning.[6]

When determining whether a defendant was entitled to *Miranda* warnings, we review the judge's legal conclusions de novo and his factual findings for clear error.  *See United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996).  A custodial interrogation may not occur before a suspect is warned of his rights against self-incrimination.  *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007) (per curiam) (citing *Miranda*, 384 U.S. at 445, 86 S. Ct. at 1612).  An "interrogation" for *Miranda* purposes is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90 (1980); *see also United States v. Castellana*, 500 F.2d 325, 326-27 (5th

---

[6] By failing to brief on appeal any claim that his statement about the gun otherwise was involuntary, Freeman has abandoned this issue.  *See United States v. Woods*, 684 F.3d 1045, 1064 n.23 (11th Cir. 2012) (per curiam) (recognizing an appellant abandons an issue if he fails to develop any argument in support of it in his opening brief).

Cir. 1974) (en banc) (concluding no "interrogation" occurred under *Miranda*, when an officer asked a suspect, shortly after he had been placed in custody, whether any weapons were within his reach, as the question was not an attempt to elicit evidence of a crime); *id.* at 327 ("[E]vidence discovered by the police in the course of doing what they have a right to do is not subject to suppression."). The public-safety exception to *Miranda* allows officers to question a suspect without first providing *Miranda* warnings when necessary to protect themselves or the general public. *Newsome*, 475 F.3d at 1224.

Officer Miller's questions as to whether Freeman was carrying a weapon were not an "interrogation" under *Miranda*, because the purpose of the questions was to ensure the officers' safety during Freeman's arrest and not to elicit evidence of a crime. *See Castellana*, 500 F.2d at 326-27; *see also Newsome*, 475 F.3d at 1224. Because the gun was found in Freeman's waistband, his statement regarding it had no probative value beyond the presence of the gun. The gun would have been admissible either as the product of a search incident to a lawful arrest or under the inevitable-discovery doctrine; therefore, any possible error in the judge's decision on the admissibility of Freeman's statement was harmless, even if the questioning had been subject to the *Miranda* requirements. *See United States v. Rhind*, 289 F.3d 690, 692-94 (11th Cir. 2002) (applying harmless-error analysis to alleged Fourth Amendment violations, where defendants entered conditional

guilty pleas); *cf. Roper*, 681 F.2d at 1359 (holding that any possible *Miranda* violation was harmless beyond a reasonable doubt, where defendant's statement about a weapon was proof only of his possession of the weapon, which was not in dispute during his trial).

C. Sentencing Enhancement

Freeman argues he did not qualify for the four-level sentencing enhancement for possession of a firearm in connection with another felony, because his possession of three small baggies of marijuana at the time of his arrest did not qualify as a felony. He contends the record does not support a finding he intended to distribute marijuana, and there is no indication his gun potentially would facilitate another felony, emboldened him to possess the marijuana, or was intended to protect the marijuana. He instead asserts the record shows he possessed the gun for self-protection, because of a prior burglary of his home.

We review a judge's application of the Sentencing Guidelines de novo and his factual findings for clear error. *United States v. Victor*, 719 F.3d 1288, 1290 (11th Cir. 2013). Under § 2K2.1(b)(6)(B), a four-level enhancement applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The four-level "in connection with" increase applies if the gun "facilitated, or had the potential of facilitating, another felony offense." *Id.* § 2K2.1 cmt. n.14(A).

16

"[A]nother felony offense" is defined, in relevant part, as "any federal, state, or local offense, . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."

*Id.* § 2K2.1 cmt. n.14(C).  The commentary to § 2K2.1 further provides:

> Application When Other Offense is Burglary or Drug Offense. Subsection[] (b)(6)(B) . . . appl[ies] . . . in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia.  In these cases, application of subsection[] (b)(6)(B) . . . is warranted because the presence of the firearm has the potential of facilitating another felony offense . . . .

*Id.* § 2K2.1 cmt. n.14(B).  Under the § 2K2.1 commentary and our precedent interpreting the "in connection with" requirement, "[a] firearm found in close proximity to drugs or drug-related items simply 'has'—without any requirement for additional evidence—the potential to facilitate the drug offense."  *United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013).

Freeman's conduct satisfied § 2K2.1(b)(6)(B).  He has acknowledged police reports showed a gross weight of 52.5 grams, or 1.85 ounces, for the marijuana found in his car.  Under Georgia law, possession of more than one ounce of marijuana is a felony.  *See* O.C.G.A. §§ 16-13-2(b), 16-13-30(j).  Freeman has shown nothing in the record supporting his suggestion the packaging may have accounted for nearly half of the gross weight of the marijuana.  Because the gun was found in close proximity to drugs, the possession of which constituted a felony

17

under Georgia law, the judge properly applied § 2K2.1(b)(6)(B).  *See* U.S.S.G.

§ 2K2.1(b)(6)(B) & cmt. n.14(B), (C); *Carillo-Ayala*, 713 F.3d at 92.

The judge also did not err when he found Freeman intended to distribute the

marijuana.  The judge's finding was supported by (1) the packaging of the

marijuana, in three separate baggies, (2) Freeman's multiple prior convictions for

possession with intent to distribute controlled substances, (3) the fact that the gun

was loaded when he was stopped, and (4) the tape covering the gun, which

suggested an intent not to leave fingerprints on it.  *See United States v. Bennett*,

472 F.3d 825, 833-34 (11th Cir. 2006) (per curiam) (explaining the failure to

object to PSI factual allegations admits those facts for sentencing purposes).  On

these facts, in addition to Freeman's carrying a gun in his car, rather than at home,

the judge did not err in rejecting Freeman's contention that he possessed the gun

for home protection.  Section 2K2.1(b)(6)(B) also was applicable, because

Freeman possessed the gun in connection with the federal felony of possession

with intent to distribute marijuana.  *See* 21 U.S.C. § 841(a)(1), (b)(1)(D); U.S.S.G.

§ 2K2.1(b)(6)(B) & cmt. n.14(B), (C); *Carillo-Ayala*, 713 F.3d at 92.

D. Substantive Reasonableness of Sentence

Freeman argues his sentence is unreasonably harsh in view of the record and

the 18 U.S.C. § 3553(a) factors.  He asserts all of his prior convictions occurred

nine to twelve years ago, beginning when he was a teenager.  He represents he had

suffered substantial physical and verbal abuse as a child, during which time several family members had been involved in drug activity. Freeman asserts he has shown a steady commitment to gainful employment and independence since his release from prison in 2008, and he has obtained housing, a vehicle, and a driver's license.

Whether a sentence is substantively reasonable is reviewed for abuse of discretion under the totality of the circumstances and the § 3553(a) factors. *See Gall v. United States*, 552 U.S. 38, 41, 51, 128 S. Ct. 586, 591, 597 (2007). The judge must impose a sentence sufficient, but not greater than necessary, to comply with the purposes listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the sentencing judge. *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008). We will reverse only if left with the "definite and firm conviction" the judge committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence outside the range of reasonable sentences dictated by the facts of the case. *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted).

19

A sentence well below the statutory maximum is one indicator of a reasonable sentence. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam). Although we do not automatically presume a within-Guidelines sentence is reasonable, we ordinarily expect it to be reasonable. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008). The party challenging the sentence has the burden of showing it is unreasonable. *United States v. Dean*, 635 F.3d 1200, 1203-04 (11th Cir. 2011).

Freeman has not met his burden of showing his sentence is substantively unreasonable on this record and the § 3553(a) factors. *See Gall*, 552 U.S. at 51, 128 S. Ct. at 597; *Talley*, 431 F.3d at 788. Because Freeman's 108-month-imprisonment sentence was within his 100-to-120-month Guidelines range, we expect it to be reasonable. *See Hunt*, 526 F.3d at 746. The sentence was below the statutory maximum of 10 years of imprisonment, which is another indicator of its reasonableness. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2); *Gonzalez*, 550 F.3d at 1324. Freeman's prior sentences had not deterred him from breaking the law, and the judge was well within his discretion in finding a Guidelines sentence was appropriate in this case, particularly to protect the public. Consequently, Freeman has not shown his within-Guidelines sentence was outside the range of reasonable sentences dictated by the facts of his case. *See Irey*, 612 F.3d at 1190.

E. Scrivener's Errors in Judgment

Although neither Freeman nor the government addresses the fact that there are typographical errors in his judgment of conviction, we may raise the issue sua sponte and remand with instructions to correct the errors. *See United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006). Freeman's judgment states he was convicted of violating "922(g)(1) and 924(e)(1)," without referring to a United States Code title. ROA at 242. The parties agreed Freeman was not subject to 18 U.S.C. § 924(e)(1), and the judge did not sentence him under that statute.

Therefore, we remand for the limited purpose of amending the judgment to include the applicable United States Code title and to reflect that Freeman was convicted of violating only 18 U.S.C. § 922(g)(1), and not 18 U.S.C. § 924(e)(1). *See Massey*, 443 F.3d at 822 (remanding to correct clerical error in judgment regarding statute of conviction).

**AFFIRMED IN PART, REMANDED IN PART.**

21